RONALD PERKINS, Plaintiff-Appellant, v. PEPSI-COLA GENERAL BOTTLERS, INC., Defendant-Appellee.

Second District   No. 2—86—0907

Opinion filed July 29, 1987.

894

Julius V. Padegimas, of Chicago, for appellant.

Hugh C. Griffin and Mark D. Wilcox, both of Lord, Bissell & Brook, of Chicago, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

The plaintiff, Ronald Perkins, appeals from the judgment of the circuit court which granted the motions of the defendant, Pepsi-Cola General Bottlers, Inc. (Pepsi), for summary judgment of his wrongful discharge claim and to dismiss his libel claim. On appeal the plaintiff argues, first, that the lower court's decision to grant the defendant's motion for summary judgment promotes fraud and intentional misconduct. Additionally, the plaintiff contends that the trial court's decision to dismiss his libel claim violates section 2—616(b) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—616(b)).

The following facts are relevant to this appeal. On October 15, 1982, the plaintiff worked as a mechanic in the defendant's Aurora facility. He belonged to the Automobile Mechanics Local No. 701, International Association of Machinists & Aerospace Workers, AFL-CIO (union). A bargaining agreement between the union and Pepsi governed the relationship of all union members at Pepsi. This agreement was in effect on October 15, 1982. Article XI provided that no employee could be discharged except for "just cause." Article XVIII set forth the specific grievance and arbitration procedures whereby any employee discharged or otherwise disgruntled by any employment-related decision of Pepsi's could seek to have the matter resolved.

On October 15, 1982, the plaintiff left work without permission from Pepsi and without having punched his time card. This action violated Pepsi's "General Rules of Conduct." According to these rules, the prescribed discipline for the plaintiff's act was termination. Accordingly, on October 18, 1982, the defendant discharged the plaintiff.

On that same day, Gene Staniszewski, the plaintiff's union business representative under the collective-bargaining agreement, called a meeting at which the plaintiff and Pepsi's representatives were present to discuss the plaintiff's discharge. At the meeting the plaintiff admitted leaving work without permission and further conceded asking someone else to punch out his time card. Staniszewski then advised the plaintiff that the union would institute a formal grievance and arbitration proceeding if the plaintiff requested. He expressed pessimism, however, in view of the plaintiff's admitted fault. The plaintiff never requested the institution of any formal grievance.

On December 18, 1982, the plaintiff filed a complaint seeking compensatory and punitive damages based on his allegedly wrongful discharge. Specifically the plaintiff alleged that his discharge resulted from a "set-up," as well as the defendant's arbitrary and fraudulent enforcement of unpromulgated work rules contrary to the defendant's customary practice and procedure.

On June 14, 1985, the plaintiff filed an amended complaint containing a second count that for the first time charged Pepsi with libel. On September 13, 1985, the plaintiff filed a second amended count II which added specificity to his libel allegations.

On August 29, 1986, the court granted Pepsi's motion for summary judgment on count I, the discharge claim, and its motion to dismiss the plaintiff's claim for libel. Specifically, the court found the plaintiff's discharge claim barred by his failure to exhaust grievance and arbitration remedies provided in the agreement. The count also found the plaintiff's libel claim barred by section 13—201 of the Code of Civil Procedure, the one-year statute of limitations applicable to libel actions. (Ill. Rev. Stat. 1985, ch. 110, par. 13—201.) The plaintiff then filed this appeal.

On appeal the plaintiff argues that the court granted the defendant's motion for summary judgment with regard to count I, the discharge claim, on the erroneous basis that the collective-bargaining agreement and section 301 of the Labor Management Relations Act (LMRA) (29 U.S.C.A. sec. 185 (West 1978)) preempted his State court action alleging intentional tortious misconduct. It is the plaintiff's position that the contractual rights available to him under the collective-bargaining agreement are not the only remedy, but rather are merely additional, alternative remedies to those already available under State tort law. Our first concern in this appeal then is whether the plaintiff's alleged State law claim is preempted by the LMRA.

■ The preemption doctrine has its basis in the supremacy clause of the United States Constitution (U.S. Const., art. VI, cl. 2). Federal law, under this doctrine, is deemed to override or preempt State laws on the same subject in some instances. (See generally *Rice v. Santa Fe Elevator Corp.* (1947), 331 U.S. 218, 229-31, 91 L. Ed. 1447, 1458-59, 67 S. Ct. 1146, 1151-53.) The question of whether State action is preempted by Federal law is one of congressional intent. *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 208, 85 L. Ed 2d 206, 213, 105 S. Ct. 1904, 1910.

An example of the preemption doctrine is found in the recent Illinois Supreme Court decision of *Bartley v. University Asphalt Co.* (1986), 111 Ill. 2d 318, 333. In that case the Illinois Supreme Court held that the plaintiff's cause of action against his union for civil conspiracy was preempted by Federal labor-contract law as it was substantially dependent upon analysis of the terms of the collective-bargaining agreement. This finding was based on the court's analysis of the plaintiff's complaint wherein the plaintiff alleged that a collective-bargaining agreement was in force between the defendants; that the

employer violated the terms of the agreement; that the union conspired with the employer to violate the terms; and that the union breached its statutory duty of fair representation. The court concluded that the plaintiff's State tort claim was "inextricably intertwined with consideration of the terms of the labor contract." 111 Ill. 2d 318, 332, citing *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 213, 85 L. Ed. 2d 206, 216-17, 105 S. Ct. 1904, 1912; see also *Sagen v. Jewel Cos.* (1986), 148 Ill. App. 3d 447, 452.

The *Bartley* court's conclusion was facilitated by an analysis of the Supreme Court decision of *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 85 L. Ed. 2d 206, 105 S. Ct. 1904, where the court held that the State tort claim against the plaintiff's employer and its insured, alleging bad faith in the handling of his disability claim, was preempted by section 301 of the LMRA. The court further stated that congressional policy favored a uniform body of Federal labor-contract law and that any State rule that purports to define the meaning or scope of a term in a labor contract suit is preempted. (471 U.S. 202, 210, 85 L. Ed. 2d 206, 214-15, 105 S. Ct. 1904, 1911.) The *Lueck* court then concluded that the same policy considerations require application of the preemption doctrine to many State tort claims:

> "If the policies that animate section 301 are to be given their proper range, however, the pre-emptive effect of section 301 must extend beyond suits alleging contract violations. These policies require that 'the relationships created by [a collective-bargaining] agreement' be defined by application of 'an evolving federal common law grounded in national labor policy.' [Citation.] The interests in the interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation. Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of [the] suit for breach of contract or in *** suit alleging liability in tort. Any other result would elevate form over substance and allow parties to evade the requirements of section 301 by relabeling their contract claims as claims for tortious breach of contract." 471 U.S. 202, 210-11, 85 L. Ed. 2d 206, 215, 105 S. Ct. 1904, 1911.

In concluding that the State tort claim was dependent upon analy-

sis of the terms of the labor agreement, the Supreme Court looked at two factors. First, the history of the State tort was reviewed to discover whether it was intrinsically related to the nature and existence of the labor contract. Then the court analyzed whether the claims were those traditionally resolved through arbitration. This analysis was necessary to preserve the effective business of arbitration, a central tenet of Federal labor-contract law. 471 U.S. 202, 220, 85 L. Ed. 2d 206, 221, 105 S. Ct. 1904, 1916.

In light of these principles, it is our opinion that plaintiff's suit is premised as a State tort suit for intentional misconduct and, thus, essentially alleges a violation of the collective-bargaining agreement. Indeed, the plaintiff alleged first that the collective-bargaining agreement governs the relationship of the plaintiff and the defendant. The plaintiff next alleged that the defendant discharged him for alleged misconduct. Finally, the plaintiff denies any misconduct and, furthermore, asserts he was "set-up." Clearly, the gravamen of the plaintiff's action is that he was discharged without "just cause," a term which connotes employee-employer relations which are, in turn, governed by collective-bargaining agreements. Maintenance of such an action would require the plaintiff to show that the defendant lacked "just cause" for his dismissal and, by implication, that the labor agreement was breached. Such a determination should be governed by Federal labor laws, specifically, section 301.

A lower Federal court has reached the same conclusion applying these principles to facts virtually identical with the present case. In *Mitchell v. Pepsi-Cola Bottlers, Inc.* (7th Cir. 1985), 772 F.2d 342, *cert. denied* (1986), 475 U.S. 1047, 89 L. Ed. 2d 575, 106 S. Ct. 1266, the plaintiff-employee filed suit against Pepsi alleging that Pepsi had tortiously caused his termination or involuntary resignation with false accusations of stealing that were fraudulent and coercive. As in the present case, the plaintiff in *Mitchell* was a union member employed pursuant to a collective-bargaining agreement which prohibited the termination of employees without just cause. It also set forth detailed grievance and arbitration procedures to resolve employment disputes. The *Mitchell* plaintiff began the grievance procedure by filing a written grievance, but when his union representative told him it was useless, he abandoned further proceedings and did not seek arbitration or other review available under his union's collective-bargaining agreement. The district court entered summary judgment in favor of Pepsi on the grounds that the plaintiff had failed to exhaust his administrative remedies under the collective-bargaining agreement as required by section 301 of the LMRA, and the United States Court of Appeals

for the Seventh Circuit affirmed.

██ ██ All section 301 claims include, as a general requirement, that employees must attempt to exhaust grievance and arbitration procedures before bringing suit in Federal or State court. (*Republic Steel Corp. v. Maddox* (1965), 379 U.S. 650, 652, 13 L. Ed. 2d 580, 582-83, 85 S. Ct. 614, 616.) In the present case, the plaintiff initiated a grievance and arbitration proceeding but declined to pursue the full range of administrative review available under the collective-bargaining agreement. It is undisputed that his union representative advised him that the union would file and process a formal grievance if he desired. The plaintiff cannot protest that requiring him to exhaust administrative remedies under the collective-bargaining agreement would result in unfairness because his union representatives subverted the grievance and arbitration process and thereby breached their duty of fair representation. (*Mitchell v. Pepsi-Cola Bottlers, Inc.* (7th Cir. 1985), 772 F. 2d 342, 347.) Thus, in our opinion the trial court properly found that Federal law obligated the plaintiff to exhaust his contract remedies before bringing suit under section 301. Because the plaintiff failed to exhaust his contract remedies, the court properly granted summary judgment for the defendant on the plaintiff's count I.

We note briefly that the cases cited in the plaintiff's brief all involve physical violence, threats of physical violence, or claims involving the separate and independent tort of retaliatory discharge wherein an employee is fired for conduct protected by an overriding public policy. The present case, however, involves no incident of physical violence and no overriding public policy issue. Essentially, the plaintiff's complaint simply alleges that the cause for his discharge was not "just" as required by the collective-bargaining agreement. Obviously, if every case of wrongful discharge were a valid "public policy" matter, the mandatory grievance-arbitration procedures would be rendered meaningless.

██ The plaintiff's second argument concerns the trial court's dismissal of his amended count II claim for libel. The plaintiff filed his original complaint on October 18, 1982, wherein he stated the facts of his discharge and alleged that he had been subjected to an arbitrary enforcement of the defendant's work rules. The complaint stated no allegations of libel. On June 14, 1985, the plaintiff filed an amended complaint which added a second count of libel. Count II was stricken by agreed order on August 16, 1985. Thereafter, on September 12, 1985, the plaintiff filed a second amended count II which recited specific allegations of defamation which allegedly occurred on October 18,

19, 21, and November 8, 1982. In response, the defendant moved to dismiss count II on the grounds that it was barred by the one-year statute of limitations stated in section 13—201 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 13—201). On August 29, 1986, the court found the plaintiff's second amended count II barred by the statute of limitations, and also that it did not grow out of the same transaction or occurrence set forth in the original pleading so as to bring it within the "relation back" provision of section 2—616 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—616(b)). In the instant appeal the plaintiff argues that since his original complaint, which was timely filed, alleged the same occurrence as his amended complaint and the amended count II, the lower court's decision violated the "relation back" provision of section 2—616(b). We disagree.

Section 2—616(b) of the Code of Civil Procedure provides that an amended complaint relates back to the time of the filing of the initial complaint if the initial complaint was timely filed and "if it shall appear from the original and amended pleading that the cause of action asserted *** in the amended pleading grew out of the same transaction or occurrence set up in the original pleading." Under this section, the statute of limitations is not a bar to subsequent amendments even though a new or different cause of action is asserted, so long as the original and amended pleadings arise out of the same transaction or occurrence. (*Kakuris v. Klein* (1980), 88 Ill. App. 3d 597, 602.) The circumstances under which an amended complaint may be deemed to relate back to the date of the filing of the initial complaint depend upon whether the original complaint provides the defendant with all of the information necessary to prepare a defense to the claims subsequently asserted in the amended complaint. (*Chestnut v. Adeli* (1985), 131 Ill. App. 3d 24, 27.) The requirement that the amended complaint grows out of the same transaction or occurrence asserted in the original complaint is based " 'on the rationale that the defendant has not been prejudiced so long as his attention has been directed to the facts which form the basis of the claim within the prescribed time. [Citation.]' " (*Chestnut v. Adeli* (1985), 131 Ill. App. 3d 24, 27, quoting *Krieger v. Village of Carpentersville* (1972), 8 Ill. App. 3d 243, 246-47.) It is clear then that if the cause of action in the amended complaint does not grow out of the same transaction or occurrence set up in the original pleading, a new cause of action has been alleged. A new cause of action, first introduced by an amended complaint, is regarded as a new suit commenced on the date the amended complaint was filed. *Millsaps v. Bankers Life Co.* (1976), 35 Ill. App. 3d 735,

742.

These principles were applied to a libel action in *Kakuris v. Klein* (1980), 88 Ill. App. 3d 597, a case relied on by the trial court. In *Kakuris*, the original complaint alleged that the defendant, the plaintiff's former employer, had engaged in an ongoing malicious course of conduct that resulted in the plaintiff's being terminated, having his reputation destroyed, and preventing his future employment. The original complaint made reference to certain statements made by the defendant; however, there were no specific allegations that these comments were libelous or that they were published to a third party. The court held that a subsequent amended complaint, containing specific libel allegations, did not relate back to the time of filing of the original complaint under section 46(2) of the Civil Practice Act (predecessor to section 2—616(b)) and affirmed the dismissal of the amended complaint for libel on statute of limitations grounds. Specifically, the court stated:

> "It is our opinion *** these publications do not grow out of the occurrence described in the original complaint and, thus, do not relate back under section 46(2). While plaintiff's second amended complaint alleged that defendants perpetrated an ongoing defamatory 'campaign' against plaintiff, no such allegations were made in the original complaint, which only specifically referred to the March 18, 1974, statement and their effect on his re-employment efforts. Rather, each alleged defamatory statement in the second amended complaint constituted a separate cause of action arising from distinct circumstances. In addition, none of these publications was mentioned in the original complaint, with the exception of a general reference to the October 11, 1973, statement. Yet, that particular reference in the original complaint failed to specify that a defamatory remark was made or that it was published to a third party; it only alleged that plaintiff was threatened with termination for his union-organizing involvements. Evidence of any of the publications standing alone does not support a cause of action for any of the others. Accordingly, it cannot be said that the original complaint furnished defendants with information necessary to prepare its defense to the various claims subsequently asserted." 88 Ill. App. 3d 597, 603.

■ In the present case the plaintiff's original complaint makes no reference to any statement made by the defendant as a basis for any of the plaintiff's claims. Thus, we cannot say that the original complaint furnished the defendant with information necessary to prepare

a defense to the specific libel claims which were asserted more than 1½ years after the libel statute of limitations expired. Therefore, we agree with the trial court that the amendment did not relate back.

Accordingly, for the reasons set forth above, the judgment of the circuit court is affirmed.

Affirmed.

LINDBERG, P.J., and WOODWARD, J., concur.