750 P.2d 1387

**AUTO–OWNERS INSURANCE COMPA-NY, Plaintiff/Appellee,**

v.

**Byron C. MOORE, Defendant/Appellant.**

**No. 2 CA–CV 88–0037.**

Court of Appeals of Arizona, Division 2, Department B.

Feb. 23, 1988.

As Corrected April 12, 1988.

Dake, Hathaway & Swan, P.A. by Mitchell S. Eisenberg, Phoenix, for plaintiff/appellee.

Callahan, Gorman & Woodford by John R. Callahan, Tempe, for defendant/appellant.

OPINION

ROLL, Judge.

Defendant/appellant Byron C. Moore (Moore) appeals from the granting of summary judgment in favor of plaintiff/appellee Auto–Owners Insurance Company (Auto–Owners) in a declaratory judgment action brought by Auto–Owners. This lawsuit arose in connection with an automobile-pedestrian traffic accident in which Moore was severely injured.

We vacate the trial court's order granting judgment in favor of Auto–Owners and remand for trial.

**FACTS**

On November 15, 1985, Moore was in a crosswalk on Mill Avenue, just north of Eleventh Street in Tempe, Arizona when he was struck by a vehicle travelling southbound in the curb lane, driven by Scott Seeger. Scott was 16 years old at the time and was driving a Pontiac Trans–Am owned by his father, Eric Seeger, and used by his mother, Joan Seeger. When the traffic accident occurred, Scott was on his way to pick up his mother and transport

her to Sanford Rose Associates, where both he and his mother assisted in various office tasks. Sanford Rose Associates is a business owned by Eric Seeger and insured by Auto–Owners.

In a March 25, 1986, sworn statement given by Eric Seeger, he stated that Scott came to Sanford Rose Associates at 325 East Southern in Tempe, Arizona after school on the day of the accident. Eric Seeger stated that Scott had been at the office less than an hour when Eric told Scott that it was time for Scott to go pick up Joan Seeger and bring her back to the office to work. However, in a deposition on December 9, 1986, Eric Seeger stated that Scott had gone directly from school to pick up Joan Seeger and insisted that he had not seen Scott that day prior to learning of the accident.

Scott testified at a deposition in December of 1986 that on the day of the accident he drove the car to school and did maintenance on it in connection with his auto shop class. He testified that he was out of regular classes at 2:30 in the afternoon and that he remained at school to work on the car until the time he went to pick up his mother to bring her to Sanford Rose Associates. The accident occurred before Scott reached his mother's location.

### PROCEDURAL HISTORY

On May 16, 1986, Moore filed a complaint against the Seegers individually and against Sanford Rose Associates. Moore maintained that Scott's trip was taken in the course of the business of Sanford Rose Associates. Auto–Owners filed a complaint seeking declaratory relief on the issue of liability coverage for the accident.

Moore moved for summary judgment on Auto–Owners' complaint. The trial court initially denied Moore's motion for summary judgment, finding that, while there were no genuine issues of material fact in dispute, reasonable minds could differ in determining from those facts whether the vehicle driven by Scott was being used in the business of Sanford Rose Associates when the accident occurred.

Moore later renewed his motion for summary judgment, and Auto–Owners filed a cross-motion for summary judgment. On January 19, 1987, the trial court granted Auto–Owners' cross-motion for summary judgment and denied Moore's motion for summary judgment. The trial court stated that, based on the facts of the case, "it is clear the trip was for personal business," and therefore no coverage existed under the Auto–Owners policy.

### ISSUES ON APPEAL

Moore argues that the trial court erred in denying his motion for summary judgment and in granting Auto–Owners' cross-motion for summary judgment on the issue of liability coverage.

### DISCUSSION

In reviewing the granting of summary judgment, this court must view the evidence in the light most favorable to the party opposing the motion and draw all inferences fairly arising from the evidence in favor of that opposing party. *Brown Wholesale Electric Co. v. Safeco Insurance Co.*, 135 Ariz. 154, 157, 659 P.2d 1299, 1302 (App.1982). Summary judgment is appropriate where the record shows that there is no genuine dispute as to any material fact, that only one inference can be drawn from those facts, and that based upon the facts, the moving party is entitled to judgment as a matter of law. *Giovanelli v. First Federal Savings and Loan Association of Phoenix*, 120 Ariz. 577, 581, 587 P.2d 763, 767 (App.1978). If there are material facts upon which reasonable people could reach different conclusions, summary judgment is inappropriate. *Gulf Insurance Co. v. Grisham*, 126 Ariz. 123, 124, 613 P.2d 283, 284 (1980).

The issue in this case is whether the Seeger vehicle was being used "in the business of" Sanford Rose Associates when the accident occurred. The applicable language in the policy issued by Auto–Owners is as follows:

COVERAGE E—BUSINESS LIABILITY
The Company [Auto–Owners] will pay on behalf of the **insured** all sums which the

**insured** shall become legally obligated to pay as damages because of **bodily injury**, **property damage** or **personal injury** caused by an occurrence to which this insurance applies ....

\* \* \* \* \* \*

BUSINESS LIABILITY EXCLUSIONS

Under Coverage E, this policy does not apply:

1. to **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of:

(a) any **automobile** or aircraft owned or operated by or rented or loaned to any **insured**; or

(b) any other **automobile** or aircraft operated by any person in the course of his employment by any **insured**.

\* \* \* \* \* \*

This exclusion [exclusion 1(a) & (b) above] does not apply to the use in the business of the **named insured** of a non-owned **private passenger automobile** by any person, other than the **named insured**, or the occasional and infrequent use of a non-owned **commercial automobile** by an employee of the **named insured** in such business; ...

The trial court found that it was not material whether Scott left from his father's office or from the school to run what it characterized as an "errand." The trial court cited the test from *Anderson v. Gobea*, 18 Ariz.App. 277, 281–82, 501 P.2d 453, 457–58 (1972). The test in *Anderson* was adopted from a New York opinion by Judge Cardozo, which stated:

"If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been cancelled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk."

18 Ariz.App. at 282, 501 P.2d at 458, quoting *Marks' Dependents v. Gray*, 121 N.Y. 90, 167 N.E. 181, 183 (1929). In *Anderson*, the court elaborated:

It must be stressed that to make this rule complete it is not necessary under this formula, that, on failure of the personal motive, the business trip would have been taken *by this particular employee at this particular time*. It is enough that someone, sometime, would have had to take the trip to carry out the business mission. (Emphasis supplied.)

Auto–Owners argues that the "coming and going" rule controls disposition of this case. Under that rule travel necessarily incurred in coming to or going from work is not within the scope of employment. *Scottsdale Jaycees v. Superior Court of Maricopa Co.*, 17 Ariz.App. 571, 575, 499 P.2d 185, 189 (1972). However, performance of a special errand by an employee is an exception to the "coming and going" rule. *Ducey v. Argo Sales Co.*, 25 Cal.3d 707, 716, 159 Cal.Rptr. 835, 844, 602 P.2d 755, 764 (1979); *cf. Scottsdale Jaycees, supra*, 17 Ariz.App. at 575, 499 P.2d at 189.

If the evidence unequivocally established that Scott Seeger went directly from McClintock High School to pick up his mother so that they could both report for work at Sanford Rose Associates, Scott's trip would fall squarely within the "coming and going" rule. However, the evidence is not unequivocal.

On March 25, 1986, just four months and ten days after the accident, Eric Seeger made the following statements under oath:

Q. Who told [Scott Seeger] to come by that day and pick [Joan Seeger] up; do you know?

Did you or your wife indicate to your son, Scott, to please drop by and pick up mom?

A. [by Eric Seeger] We both told him.

\* \* \* \* \* \*

Q. Where was [Scott Seeger] coming from at the time [of the accident]?

A. From my office.

Q. Where was your office located?

A. 325 East Southern, Tempe. The corner of College and Southern.

Q. Now, that is decidedly south of where he was? In fact, he was heading

back in your direction. Do you know where he had gone from your office?

A. Yes. He had gone to Rural and gone north on Rural. Where you exit out of our parking lot it is just impossible to turn left, so he turned right and went to Rural and went north to—he was going to turn at Apache and didn't get in the left-hand turn lane and so he went to University.

Q. All right.

A. And he turned left on University and left on Mill.

Q. And then he made a bunch of left turns to come back in the same direction?

A. Yes.

Q. Is this something he has told you, Mr. Seeger, that he did?

A. Yes.

Q. Why was he at your office at the time?

A. Well, maybe I should tell you the reason he had the car that day, which was the first time he had it, is he has an auto class at school and he needed a car and we gave him the car with the understanding that he would come to the office and I would have him cut out ads, help me at my business, and then at the time that his mother was to get off work he was to leave and pick her up. That's why he was at my office.

Q. How long was he there before he left your office?

A. Not an hour.

Q. Has he ever performed any business functions for your business?

A. No. That was a new thing we had set up so he could use the car, a little chore we set up for him in the business. He just cut out some ads.

\*   \*   \*   \*   \*   \*

Q. Was there any business purpose on behalf of your company that he was performing, your son, when he left that afternoon to go pick your wife up?

A. Well, he had to pick his mother up so that she could leave work, but he was going to pick her up and bring her to the office so she could type some resumes for me.

However, at their respective depositions thirteen months after the accident, Eric Seeger and Scott Seeger stated that Scott never went to the Sanford Rose Associates' office before going to pick up his mother.

There is a conflict in the evidence. A reasonable person could conclude that Scott Seeger went to his father's office after school, worked for a period of time, then was dispatched by his father on a special errand to pick up co-employee Joan Seeger. We believe that summary judgment was inappropriate.

We vacate the trial court's granting of Auto–Owners' cross-motion for summary judgment and remand this matter for trial.

LIVERMORE, P.J., and FERNANDEZ, J., concur.