788 P.2d 104

**Lawrence Joseph FEDEROFF, an incapacitated person, By and Through his Guardian and Conservator, Donald R. ROBERTS, Sr., Edward and Mildred Federoff, husband and wife, Plaintiffs/Appellants,**

v.

**AETNA CASUALTY AND SURETY COMPANY, Defendant/Appellee.**

**No. 2 CA–CV 89–0084.**

Court of Appeals of Arizona, Division 2; Department A.

Nov. 14, 1989.

Reconsideration Denied Dec. 22, 1989.

Review Denied March 20, 1990.

Leighton H. Rockafellow by Lynn E. Goar, Tucson, for plaintiffs/appellants.

Black, Robertshaw, Copple & Pozgay by Steven D. Copple and Philip C. Thorpe, Phoenix, for defendant/appellee.

OPINION

HATHAWAY, Judge.

This appeal is taken from summary judgment entered in favor of defendant Aetna Casualty and Surety Company (Aetna) in a declaratory judgment action.

Summary judgment is proper only where there is no genuine dispute as to any material fact and only one inference can be drawn from those undisputed material facts. *Giovanelli v. First Federal Savings and Loan Ass'n of Phoenix*, 120 Ariz. 577, 587 P.2d 763 (App.1978). The moving party must be entitled to judgment as a matter of law. *Auto–Owners Ins. Co. v. Moore*, 156 Ariz. 184, 750 P.2d 1387 (App. 1988).

---

Appellant Lawrence Federoff was injured when the vehicle in which he was a passenger was struck by a dump truck owned by Arthur and Gail Barrios, doing business as Barrio's Landscape and Maintenance (Barrios). The truck was insured by Aetna for a liability limit of $500,000, the amount of coverage required by A.R.S. § 28–1233 at the time the policy was issued. While the policy was in effect, the statute was amended to require $750,000 coverage. The collision occurred two days after the effective date of the amended statute. Aetna paid appellants the policy limit of $500,000 but refused to pay an additional $250,000 demanded by appellants.

Aetna maintains that the policy limit is $500,000. Appellants argue that the amendment to A.R.S. § 28–1233 required that the liability limit be automatically increased to $750,000 on the effective date of the amendment. The parties submitted the issue to the superior court requesting declaratory relief. Upon cross-motions, the trial court granted summary judgment for Aetna and appellants appealed.

The sole issue on appeal is whether Aetna was obligated to automatically and unilaterally increase the coverage of the policy to comply with the statutory amendment. Based upon the undisputed facts, we do not believe Aetna was responsible for increasing the policy limit to comply with the change in this particular statute. We agree with the trial court and affirm.

The statute places the burden of complying with the financial responsibility requirements on the owner of a commercial vehicle, not on the liability insurance carrier. A.R.S. § 28–1233(A)(1)(a) provides that "[e]very person ... shall maintain ... liability insurance" in the amount of $750,000. A.R.S. § 28–1231 defines a person as "an owner or operator of any motor vehicle ... subject to the financial responsibility requirements of this article."

We note that there is no mention of § 28–1233 and the liability limits imposed on motor carrier policies by that provision in Title 20, A.R.S., governing the issuance of insurance policies. In contrast, A.R.S. § 20–259.01 expressly precludes the issuance of automobile liability policies that do not provide the limits set forth in § 28–1102.[1] Moreover, the legislature has specified that the liability limits for automobile insurance shall be contained in one policy. In the area of commercial motor carrier liability insurance, the legislature has not restricted the insured as to the manner in which the liability limit is to be satisfied. The insured can self-insure, procure an excess or umbrella policy, or procure a bond to prove financial responsibility. A.R.S. § 28–1235.

When § 28–1233 was amended to increase the minimum allowable liability limits, Barrios was responsible for obtaining the additional insurance. It could have accomplished this by requesting Aetna to increase the limit of its present policy, by obtaining an umbrella policy for $250,000 from another company, or by choosing to fully or partially self-insure for the additional amount. It is the insured's decision to make, not the insurer's.

We note parenthetically that a question exists as to whether the vehicle in this case is even subject to the requirement of § 28–1233. The only vehicle described in the policy is a 1974 Chevrolet dump truck. The weight of the truck is not stated in the policy. Significantly, however, counsel for the parties advised the trial court that according to the policy's classification code, the truck was identified as a vehicle weighing under 20,000 pounds. Nowhere in the policy is there any indication that it was issued for the purpose of complying with § 28–1233. The actual weight of the truck was 18,000 pounds. If the truck was driven without a trailer it would not fall within the ambit of § 28–1233, which applies to vehicles or vehicle combinations, i.e., tractor and trailer, in excess of 20,000 pounds. Clearly it is the insured, not the insurer, who would know whether § 28–1233 ap-

**1.** (§ 28–1102 is a definitional section. § 28–1170(B) sets forth the requirements for an automobile liability policy).

plied to the vehicle or vehicle combination actually being used on the roads.[2]

Appellants argue that the insurance broker who wrote the policy for Barrios knew that the policy was being procured to meet the statutory requirement for liability coverage. While this may well be so, A.R.S. § 20–300 states that a broker, acting as such, is not an agent of the insurer. Knowledge of the broker cannot therefore be imputed to Aetna.

Even assuming, arguendo, Aetna knew § 28–1233 applied, appellants fail to establish why, as a matter of law, the onus was on Aetna to increase coverage. Appellants make much of the fact that the policy provides for an adjustment of the premium due based on Barrios' actual exposures as compared to the exposures contemplated when the policy was issued. Appellants argue that this provision contemplated the upward adjustment of the policy in compliance with the statutory change and that Aetna could have adjusted the premium to reflect the automatic change in coverage. We do not agree. When the policy was issued, Aetna computed what is referred to in the policy as an "advance premium." This premium was based on the exposures Barrios told Aetna about at that time. The policy provides that Aetna could adjust the premium if the actual exposure of the insured changed from that anticipated at the time the policy was issued. For example, if the insured told Aetna when the policy was issued that the truck would be driven 10,000 miles, and the advance premium was computed on that exposure, Aetna could adjust the premium if the actual mileage for the year of the policy turned out to be 20,000 miles. We do not believe this provision was meant to include increased exposure resulting from statutory changes. "Statutes subsequently enacted ordinarily do not affect contractual rights" under an insurance policy. 12 J. Appleman & J.

Appleman, Insurance Law and Practice § 7041 at 172 (rev.ed. 1981).

Appellants also argue that a provision in the policy that provides that the coverage will be increased if the insured vehicle is used in another state with higher liability coverage requirements indicates that Aetna was willing to increase the liability limits based on the laws of another state. Appellants argue that this provision allows for and contemplates automatic increases in coverage necessitated by the change in Arizona law. We disagree. When Aetna issued the policy, it was aware of the financial liability requirements of the various states and could determine the premium accordingly to reflect the "out-of-state" provision. Aetna knew what its exposure would be with regard to the "out-of-state" provision. The policy limits would be increased if required by another state's laws, but Aetna was aware of those limits when it wrote the policy. Moreover, the plain language of the policy clearly applies this provision to removal of the truck from this state.

Appellants finally rely on *Hayes v. LeBlanc,* 114 N.H. 141, 316 A.2d 187 (1974), where the court held that a change in statutory minimum coverage applied to previously issued policies. We find *Hayes* distinguishable. There the State Insurance Department issued a rule in connection with the statutory amendment which stated that "all motor vehicle liability policies ... shall be interpreted to afford or endorsed to provide" the higher limits as of the date of the statute. 114 N.H. at 143–44, 316 A.2d at 188. No such rule has been promulgated by the Arizona Department of Transportation. The only rule relating to A.R.S. § 28–1233 requires the owner of the vehicle to file proof of financial responsibility in the amount set forth in the statute. A.C.R.R. R17-4-445(B)(1). Such financial responsibility need not be provided entirely

---

**2.** While appellants allude in filings with the trial court and in their appellate briefs to the insured's reasonable expectation that his policy would comply with the requirements of the Financial Responsibility Law no argument based on *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.,* 140 Ariz. 383, 682 P.2d 388 (1984), was ever made to the trial court. Again, on appeal, no *Darner* argument concerning reasonable expectations is made. Even if it were, we could not consider such an issue because an argument not raised before the trial court cannot be raised for the first time on appeal. *Dillig v. Fisher,* 142 Ariz. 47, 688 P.2d 693 (App.1984).

**374**

by an insurance policy. See A.R.S. § 28-1235.

There is no merit to the argument that the policy limits were automatically increased when the amended statute took effect.

Affirmed.

ROLL, P.J., and LIVERMORE, J., concur.