812 P.2d 1025

**Jeffrey A. BOATMAN and Anne Boatman, husband and wife; Fred Riebe; and Robert McDonald, Plaintiffs/Appellants,**

v.

**SAMARITAN HEALTH SERVICES, INC., an Arizona corporation, Defendant/Appellee.**

**No. 2 CA–CV 90–0119.**

Court of Appeals of Arizona, Division 2, Department B.

Nov. 27, 1990.

Review Denied June 25, 1991.

---

Treon, Strick, Lucia & Aguirre by Richard T. Treon and The Langerman Law Offices, P.A. by JoJene E. Mills, Phoenix, for plaintiffs/appellants.

Snell & Wilmer by Robert J. Deeny, David H. Donovan, and Lonnie Williams, Phoenix, for defendant/appellee.

## OPINION

ROLL, Presiding Judge.

Plaintiffs Jeffrey A. Boatman and his wife Anne, Fred Riebe and Robert McDonald appeal from the trial court's granting of summary judgment and judgment on

the pleadings in connection with plaintiffs' respective claims of intentional interference with contract and defamation against defendant Samaritan Health Services (Samaritan). For the reasons set forth below, we affirm.

## FACTS

Samaritan had an Air Evac Program that transported patients by air. Responsibilities of personnel involved in the program included flying sick or traumatized patients between medical facilities and from trauma scenes. The Air Evac Program utilized helicopter and fixed wing aircraft.

In 1986, Pumpkin Air, Inc. (Pumpkin) successfully responded to Samaritan's request for proposal (RFP) seeking bids in connection with the furnishing of aircraft and pilots for Samaritan's Air Evac Program. Samaritan required that all bidders meet certain specific minimum requirements, including (1) a minimum of three factory-trained pilots per helicopter, (2) rotation of schedules so that one pilot per aircraft would be on duty at all times, and (3) pilot schedules to conform with Federal Aviation Administration (FAA) requirements. An agreement between Pumpkin and Samaritan was formalized July 24, 1986. This agreement stated in part:

*Personnel and Services*

A. *VENDOR will provide 3 pilots,* suitable to HOSPITAL, *to fly the helicopter,* and 1 mechanic, suitable to HOSPITAL, to perform all routine and unscheduled maintenance for the helicopter.

*VENDOR will ensure that each pilot and mechanic has all current, up-to-date and appropriate licenses or certificates as may be required by law or regulation.*

B. Flight Operations:

1. All flights will be dispatched or approved by HOSPITAL. The helicopter will be flown as dispatched by HOSPITAL, except that the *pilot on duty shall have complete authority to make all decisions concerning the suitability of weather conditions, landing areas, conditions of the heli-*

*copter for flight, loading of the helicopter, and all other factors affecting flight safety and compliance with FAA regulations.*

*Miscellaneous Obligations*

1. *VENDOR* shall comply with all applicable local, state and federal regulations, and *will assure HOSPITAL that each helicopter, pilot and mechanic* is properly licensed and certified and *meets or exceeds the minimum requirements of all applicable federal, state and local law [sic] and regulations.*

(Emphasis added.)

After Pumpkin successfully bid on Samaritan's proposal and the agreement between Samaritan and Pumpkin was formalized, Jeffrey Boatman, Fred Riebe, and Robert McDonald were assigned by Pumpkin to fly Samaritan's Air Evac Helicopter Program. Riebe and McDonald were already employees of Pumpkin and Boatman had been flying for the previous Air Evac vendor used by Samaritan. Boatman's previous Air Evac employer had used three helicopter pilots in their program. Boatman, Riebe, and McDonald all understood that a ratio of three pilots per helicopter was called for by the terms of the Pumpkin/Samaritan agreement. At the time the three pilots commenced work pursuant to the Pumpkin/Samaritan agreement, Riebe believed that three pilots per helicopter was the industry standard.

After the three pilots commenced employment, they requested that Pumpkin and Samaritan hire an additional pilot so as to raise the ratio of pilots per helicopter. On November 4, 1986, Samaritan's Air Evac Corporate Director Gordon Wolfram told the pilots that he wanted no more public statements by the pilots regarding the need for a fourth pilot. That same day, Riebe, McDonald, and Boatman resigned employment with Pumpkin. In December 1986, Samaritan announced that it was hiring a fourth pilot.

Riebe, McDonald, and Boatman allege that after their resignations, certain statements were made by Samaritan employees concerning the reasons why the three pilots

had resigned. Plaintiffs allege that on November 6, 1986, an Air Evac helicopter was taken out of service, resulting in delay in transporting a cardiac patient, and that Wolfram announced on December 4, 1986, that he heard that the pilot of the helicopter complained of being so fatigued that the pilot felt unsafe to fly any further missions. Wolfram's statement did not identify the pilot by name. The plaintiffs also allege that a second Samaritan employee, Dan Green, stated on television that "[Wolfram] made a judgment call in terms of is this individual fit to fly today." Thereafter, on December 8, 1986, Samaritan and Pumpkin employees allegedly told a television reporter of the resignations of Boatman, Riebe, and McDonald. Plaintiffs allege that Samaritan employees were quoted as saying that McDonald "quit because he didn't want to fly in the mountains at night," that Boatman quit "because his insurance benefits were cut," and that Riebe quit because he "indicated to us he had a job waiting for him in California for 30% more than he was making with us."

## PROCEDURAL BACKGROUND

In June 1987, plaintiffs filed a lawsuit against Samaritan and Pumpkin, alleging breach of contract against Pumpkin and intentional interference with business expectancies against Samaritan. The plaintiffs settled the claim against Pumpkin.

Samaritan filed a motion for summary judgment regarding plaintiffs' intentional interference claim and plaintiffs opposed the motion, arguing that summary judgment was inappropriate or, in the alternative, more time was needed to complete discovery, relying upon Rule 56(f), Ariz.R. Civ.P., 16 A.R.S. Plaintiffs also filed a motion to amend their complaint by adding a defamation count against both Pumpkin and Samaritan. On January 6, 1988, plaintiffs filed an amended complaint, adding the defamation allegations. The trial court granted Samaritan summary judgment on

plaintiffs' intentional interference claim. Thereafter, plaintiffs filed a motion for new trial, alleging newly discovered evidence consisting of deposition testimony showing that (1) Samaritan dictated each aspect of the contract between Pumpkin and plaintiffs, and (2) on November 4, 1986, Wolfram stated that no new pilots would be hired. The trial court denied the motion for new trial.

Thereafter, Samaritan filed a motion for judgment on the pleadings regarding the newly added defamation count, arguing that the statute of limitations barred this claim because the cause of action arose in December 1986, the motion to amend the original complaint was not filed until December 1987, and the amended complaint was not filed until January 1988 [1] and served until October 1988. The trial court granted Samaritan's motion for judgment on the pleadings, concluding that the statute of limitations had expired.

## ISSUES ON APPEAL

On appeal, plaintiffs argue (1) summary judgment was erroneously granted regarding the intentional interference claim against Samaritan; (2) summary judgment should have been denied pursuant to Rule 56(f), until such time as additional discovery was completed; (3) plaintiffs' motion for new trial should have been granted; and (4) the defamation count against Samaritan was not barred by the statute of limitations.

### Summary Judgment

■ In reviewing summary judgment, this court views the evidence in the light most favorable to the party opposing the motion and all favorable inferences fairly arising from the evidence must be given to the opposing party. *Hill–Shafer Partnership v. Chilson Family Trust,* 165 Ariz. 469, 472, 799 P.2d 810, 813 (1990); *Wisener v. State,* 123 Ariz. 148, 149, 598 P.2d 511, 512 (1979). "Summary judgment is appropriate where the record shows that there is

---

1. An amended complaint containing identical language to the amended complaint filed in January 1988 was filed and served on Samaritan in October 1988. The record reflects that this was the first time an amended complaint was served on Samaritan.

no genuine dispute as to any material fact, that only one inference can be drawn from those facts, and that based upon the facts, the moving party is entitled to judgment as a matter of law." *Auto–Owners Ins. Co. v. Moore,* 156 Ariz. 184, 185, 750 P.2d 1387, 1388 (App.1988). If there are material facts upon which reasonable people could reach different conclusions, summary judgment is inappropriate. *Gulf Ins. Co. v. Grisham,* 126 Ariz. 123, 124, 613 P.2d 283, 284 (1980).

Plaintiffs argue that summary judgment was inappropriate regarding the intentional interference claim. To establish a claim for intentional interference with contract, it is necessary for the plaintiffs to prove (1) existence of a valid contractual relationship, (2) knowledge of the relationship on the part of the interferer, (3) intentional interference inducing or causing a breach of the contract, (4) damage, and (5) improper interference. *Snow v. Western Sav. & Loan Assn.,* 152 Ariz. 27, 34, 730 P.2d 204, 211 (1986); *Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 386–88, 710 P.2d 1025, 1041–43 (1985).

Plaintiffs argue that sufficient evidence was presented on each of these elements to warrant denial of summary judgment. Plaintiffs contend that Samaritan's interference with performance of their contract with Pumpkin consisted of inaction. Specifically, plaintiffs maintain that Samaritan's insistence that Pumpkin perform its contract with Samaritan in accordance with the terms to which Pumpkin agreed constituted intentional interference. Plaintiffs assert that it was unsafe for only three pilots to be assigned to a single helicopter and that a fourth pilot was required. Samaritan contends that its failure to amend its contract with Pumpkin did not constitute intentional interference with the contract between plaintiffs and Pumpkin, and that to rule that Samaritan's inaction constituted interference would require a novel and unjustified extension of the law.

The plaintiffs have provided no evidence of a tortious interference with an existing contract. When Pumpkin agreed to furnish Samaritan a minimum of three pilots, the plaintiffs were not even in an existing contract with Pumpkin. When the plaintiffs were hired, it was as at-will employees of Pumpkin and they accepted employment with knowledge of the fact that only three pilots would be assigned under the Pumpkin/Samaritan contract. In fact, the uncontradicted evidence provided by the plaintiffs indicates that three pilots per helicopter was the existing standard in the industry, the same standard employed in the Pumpkin/Samaritan contract in effect prior to the plaintiffs' employment by Pumpkin. Plaintiffs argue that the fact that they requested the addition of a fourth pilot and that request was not honored by Samaritan constituted intentional interference by Samaritan. Plaintiffs also contend that Samaritan's refusal to agree to the addition of a fourth pilot was illegal as well as in violation of public policy.

We need not reach this contention of illegality because we find no basis at law for a claim of intentional interference with performance of an existing contract. There simply was no action or inaction on Samaritan's part that could be said to have altered the terms or prevented the pilots from performing according to the terms of their contract with Pumpkin. The conditions the plaintiffs were working under existed prior to the plaintiffs entering into their contract with Pumpkin. Samaritan continued to perform its obligations under its contract with Pumpkin. The fact that Samaritan did not renegotiate a new contract with Pumpkin does not constitute interference with the plaintiffs' contract with Pumpkin. Samaritan's refusal to renegotiate its contract with Pumpkin was a right they possessed under general principles of freedom to contract.

### *Rule 56(f) Motion*

Plaintiffs next argue that the trial court erred in denying plaintiffs' request that the trial court defer ruling upon Samaritan's motion for summary judgment until such time as plaintiffs completed additional discovery. Rule 56(f) states:

**When Affidavits Are Unavailable.** Should it appear from the affidavits of a

party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

This rule has been interpreted as requiring that a party seeking delay in the trial court's ruling on a motion for summary judgment furnish to the trial court "specific reasons rather than general ones." *Bobo v. John Lattimore, Contractor,* 12 Ariz.App. 137, 141, 468 P.2d 404, 408 (1970).

Plaintiffs failed to make a specific showing as to the need for delay in ruling upon Samaritan's motion for summary judgment. In addition, although plaintiffs' motion for new trial set forth the specific information which was unavailable when the opposition to motion for summary judgment was filed, even this information did not warrant denial of summary judgment in favor of Samaritan.

### *Motion for New Trial*

■ Plaintiffs argue that the trial court erred in denying their motion for new trial based upon newly discovered evidence. Plaintiffs argue that newly discovered evidence obtained through deposition testimony established that (1) Samaritan dictated every material aspect of the contract between Pumpkin and plaintiffs, including the number of pilots, and (2) Gordon Wolfram's statement on November 4, 1986, that no additional pilots would be hired, was false and misleading.

■ Our standard of review for denial of a motion for new trial is abuse of discretion. *Suciu v. Amfac Distributing Corp.,* 138 Ariz. 514, 520, 675 P.2d 1333, 1339 (App.1983); *Erikson v. Waller,* 116 Ariz. 476, 479, 569 P.2d 1374, 1377 (App.1977). The trial court's granting of a motion for new trial based upon newly discovered evidence is appropriate only if it appears that (1) the newly discovered evidence could not have been discovered before the granting

of judgment despite the exercise of due diligence, (2) the evidence would probably change the result of the litigation, and (3) the newly discovered evidence was in existence at the time of the judgment. *Wendling v. Southwest Sav. and Loan Assn.,* 143 Ariz. 599, 602, 694 P.2d 1213, 1216 (App.1984).

The identity of both witnesses furnishing the allegedly newly discovered evidence was known to plaintiffs before the entry of summary judgment. Accordingly, with due diligence, the "newly discovered evidence" could have been discovered before the trial court granted the motion for summary judgment. *Ashton v. Sierrita Mining and Ranching,* 21 Ariz. App. 303, 305, 518 P.2d 1020, 1022 (1974); 11 Wright and Miller, *Federal Practice and Procedure* § 2859 (1973). Assuming *arguendo* that the evidence was newly discovered, it was cumulative.

The trial court did not abuse its discretion in denying the motion for new trial based upon newly discovered evidence.

### *Defamation Claim*

■ Finally, plaintiffs argue that the trial court erred in granting judgment on the pleadings in favor of Samaritan. In reviewing the trial court's granting of a motion for judgment on the pleadings, all of the plaintiffs' factual allegations must be taken as true. *Food for Health Co., Inc. v. 3839 Joint Venture,* 129 Ariz. 103, 106, 628 P.2d 986, 989 (App.1981).

■ Plaintiffs argue that because the defamation count relates back to the original complaint, the fact that the defamation complaint was filed after the statute of limitations expired did not require the granting of judgment on the pleadings. Plaintiffs argue that damages arising from defamation were requested in the original complaint alleging intentional interference. Samaritan counters that the allegedly defamatory statements were not part of the facts giving rise to the initial claim, and therefore do not relate back to the earlier claim, citing *Perkins v. Pepsi Cola General Bottlers, Inc.,* 158 Ill.App.3d 893, 110

Ill.Dec. 724, 511 N.E.2d 901 (1987). In *Perkins,* plaintiff attempted to amend his wrongful discharge complaint by adding a libel count after the statute of limitations had run. The Illinois Court of Appeals concluded that the defamation count did not relate back to the wrongful discharge claim, emphasizing that the original claim made no reference to defamatory statements by the defendant. The court stated:

> In the present case the plaintiff's original complaint makes no reference to any statement made by the defendant as a basis for any of the plaintiff's claims. Thus, we cannot say that the original complaint furnished the defendant with information necessary to prepare a defense to the specific libel claims which were asserted ... after the libel statute of limitations expired.

*Id.* at 901–02, 110 Ill.Dec. at 730, 511 N.E.2d at 907.

■ Plaintiffs' original complaint did not allege that Samaritan employees made defamatory statements about the plaintiffs. The allegedly defamatory statements were made in December 1986 and the amended complaint alleging defamation was not filed until January 6, 1988. A second amended complaint containing the identical allegations as the complaint filed January 6, 1988, was filed on October 11, 1988, and served on October 19, 1988. The statute of limitations for libel or slander is one year. A.R.S. § 12–541. The statute commences to run upon publication. *Lim v. Superior Court, In and For Pima County,* 126 Ariz. 481, 482, 616 P.2d 941, 942 (App. 1980). In the matter before us, the defamation action was not filed within one year of publication of the allegedly defamatory statements. In addition, the defamation claim does not relate back to the original complaint alleging intentional interference by Samaritan, because (1) the original complaint does not allege defamatory statements, and (2) the defamatory statements alleged in the amended complaint were not part of Samaritan's alleged intentional interference with plaintiffs' contract. The trial court correctly granted judgment on the pleadings in favor of Samaritan as to this claim.

## CONCLUSION

The summary judgment and judgment on the pleadings are affirmed.

LIVERMORE and HOWARD, JJ., concur.