889 P.2d 24

**CAMMON CONSULTANTS CORP.,**
a Nevada corporation,
Plaintiff/Appellant,

v.

**H. Alan DAY Jr.,** a single man, as successor in interest to Centuras Investment Company, an Arizona Corporation, **Richard C. Houseworth,** Superintendent of the Arizona State Banking Department, as Receiver for Centuras Invest-

ment Company, Inc., **Farooq Jaffer,** as Trustee of the Northeast Imaging Pension and Profit–Sharing Plan Trust, **Farah H. Champsi,** a single woman, **D & D Financial Corporation,** an Arizona Corporation, **Jerry Edwards,** a single man, **Nathan T. Sawyer,** a single man, and **Stephen Sawyer** and **Leslie Sawyer,** husband and wife, Defendants/Appellees.

No. 2 CA–CV 93–0293.

Court of Appeals of Arizona,
Division 2, Department B.

July 5, 1994.

Review Denied Feb. 22, 1995.

Reconsideration Denied Aug. 3, 1994.

**232**

Eric L. Hager, Tucson, for plaintiff/appellant.

Corey & Farrell, P.C. by Patrick J. Farrell and Kristen B. Klotz, Sylvester Law Office, P.C. by Thomas P. Sylvester, Tucson, for defendants/appellees.

OPINION

HATHAWAY, Judge.

■ This appeal is taken from the trial court's granting of summary judgment for defendants/appellees in a tax lien foreclosure action. Summary judgment is proper when only one inference can be drawn from the facts and the moving party is entitled to summary judgment as a matter of law. *Auto–Owners Ins. Co. v. Moore*, 156 Ariz. 184, 750 P.2d 1387 (App.1988). We view the facts in the light most favorable to appellant. *Ferree v. City of Yuma*, 124 Ariz. 225, 603 P.2d 117 (App.1979).

In November 1988, Lane Justus (Justus) acquired title to 19 parcels of real property located in Pima County. At the time, the parcels were subject to a prior lien held by appellee H. Alan Day (Day) and his predecessors in interest. Also, the real estate taxes were delinquent for 1984 and subsequent years.

In February 1992, the Pima County Treasurer held a sale of tax liens for delinquent property taxes on the parcels pursuant to A.R.S. §§ 42–381 through 42–407. Justus purchased the tax liens on behalf of appellant Cammon Consultants Corporation. That March, Cammon filed an action to foreclose the tax liens, naming Justus and appellees as defendants. Appellees answered and moved for summary judgment, arguing that sale of the tax liens was invalid because the delinquent taxes were paid by the owner of the parcels, Justus, when he purchased the tax liens on behalf of his alter ego, Cammon. Cammon opposed the motion and moved for judgment on the pleadings. The trial court denied Cammon's motion and granted appellees', finding in relevant part that Cammon "is an agent of Defendant Justus," that appellees "would be harmed if the sale of the tax liens to ... [Cammon] were found to be valid," and that "[t]he sale of the tax liens in this case to an agent of the owner is contrary to public policy and unfair to the lienholders."

Cammon appeals the denial of its motion for judgment on the pleadings, the granting of appellees' motion for summary judgment, and the award of attorney's fees and costs to appellees pursuant to A.R.S. § 12–341.01(C). We affirm based upon the following undisputed facts.

Cammon was formed by Justus and the only tax liens it ever purchased are the ones involved in this case. Cammon's majority shareholder is a trust formed by Justus. The beneficiaries of the trust are Justus, his wife and his children. The sole directors of Cammon are Justus and his wife. Cammon's president is William Gottlieb, whose occupation is the development of a pharmaceutical company. Justus asked Gottlieb, a personal friend, to serve as president of Cammon which Gottleib has done since December 1990. Gottlieb was never invited to nor did he attend or call any meetings during the time he was president. In addition to acting as president, Gottlieb also served as all the other officers of Cammon, in apparent violation of A.R.S. § 10–050, which requires that the positions of president and secretary be held by different persons. Gottlieb performed no duties and received no pay for acting as president of Cammon; he was president in name only.

Gottlieb never drafted or even saw the articles of incorporation or by-laws of Cammon, nor did he know who was the corporation's agent. He was not aware that the tax liens had been purchased on Cammon's behalf and did not know the source of the funds used to make the purchases. He did not engage an attorney to draft the tax foreclosure complaint, file the complaint or represent the corporation. In fact, he was unaware of this action until his deposition was noticed. He testified that he did whatever Justus wanted as long as it was legal.

## DISCUSSION

■ When the observance of the corporate form would promote injustice, it will be disregarded. In *Employer's Liability Assurance Corp. v. Lunt*, 82 Ariz. 320, 323, 313 P.2d 393, 395 (1957), the court stated that a corporate fiction should be disregarded upon the concurrence of two circumstances: (1) when the corporation is, in fact, the alter ego of an individual or a few individuals (i.e., when they share an indivisible unity of interest); and, (2) when the observance of the corporate form would sanction a fraud or promote injustice.

■ Here, Justus and his wife are the sole directors of Cammon. The majority shareholder of Cammon stock is a Justus family trust, the beneficiaries of which are Justus, his wife and their two children. William Gottlieb, Cammon's president, performed no duties for Cammon, except to the extent he was instructed to do so by Justus. And, the tax liens at issue are the only tax liens Cammon has ever purchased. It is also noteworthy that even though Justus was named in the complaint, he filed no answer nor did he file a brief in this court in support of the trial court's decision. It is thus clear that Cammon and Justus have a commonality of interests in this case.

■ Additionally, to recognize Cammon as a corporate entity separate and distinct from Justus would work an injustice in this case. Appellee Day holds, as successor in interest, a lien of approximately $200,000 on the parcels. If foreclosure of the tax liens were permitted, Day's lien would be extinguished and Justus, through Cammon, would have the parcels free and clear of the $200,000 lien without paying anything to satisfy it.

Moreover, although it was not the basis of the trial court's ruling, we believe the following legal principle applies:

> It is a general principle of law that one who by virtue of an existing legal or contractual relation with another is under an obligation to such other person to pay the taxes on lands, but who omits to pay such taxes, cannot be allowed to strengthen his title to such land by buying in the tax title when the property is sold as a consequence of his omission to pay the taxes on it; his purchase at the sale will merely operate as a payment of the taxes, and the title will be the same as it was before the sale, except that the lien for taxes is discharged. *This rule includes those* whose duty it is to pay the taxes or *who have such an interest in the property that they might redeem the same from tax sale and save themselves from loss and injury*....

72 Am.Jur.2d *State And Local Taxation* § 941 at 234–35 (1974) (emphasis added, footnotes omitted). *See also, Weisberg v. Loughridge*, 253 Cal.App.2d 416, 61 Cal.Rptr. 563 (1967); *Miller v. First National Bank of*

*Englewood,* 164 Colo. 449, 435 P.2d 899 (1968); *Petition of Candlewick Lake Ass'n, Inc.,* 131 Ill.App.3d 939, 87 Ill.Dec. 98, 476 N.E.2d 800 (1985); *Buchanan v. Hansen,* 820 P.2d 908 (Utah 1991); *Dillman v. Foster,* 656 P.2d 974 (Utah 1982). Here, Justus was the owner of the property and thus had the right to redeem the tax liens pursuant to A.R.S. § 42–421. As one court has observed:

> In equity, the mortgagee should not be allowed to waive this right and instead become a tax purchaser, and cause injury to the other lienholders, for the minimal cost it would have taken to redeem the property from the tax sale. The property is a common fund in which all the parties have an interest. One should not be allowed to use the law of tax sales to destroy this fund to benefit oneself to the prejudice of all others. It is manifestly unfair to allow a mortgagee to use the law of tax sales for the specific purpose of working an injustice. The law of tax sales is designed to give strangers to the property a speedy method of acquiring merchantable title to the property so the property can get back into the stream of commerce so that future taxes can be collected. It is not designed to be a method by which a party with a pre-tax sale interest in the property can forego the payment of the taxes, allow the property to be sold for taxes, and then acquire it for a minimal cost so that party can raise its previous interest above all other previous interests.

*Vulcan Materials Co. v. Bee Const. Co., Inc.,* 101 Ill.App.3d 30, 37–38, 56 Ill.Dec. 465, 471, 427 N.E.2d 797, 803 (1981), *rev'd on other grounds,* 96 Ill.2d 159, 70 Ill.Dec. 465, 449 N.E.2d 812 (1983) (citations omitted). *See also Free v. Farnworth,* 105 Utah 583, 144 P.2d 532 (1943), where the same rationale was applied to an owner, who, like a mortgagee, is also entitled to redeem the property by paying the delinquent taxes.

Appellant argues that this position should be disregarded because A.R.S. § 42–401 provides that when a real property tax lien is assigned to the state, the county treasurer is to sell the certificate of purchase therefor to "any person" who pays the amount due under the certificate, the amount of taxes assessed on the property and a $1.00 fee for the assignment from the state. This position ignores the fact that A.R.S. § 42–421 expressly provides that redemption is the sole mechanism by which the owner or any other entity having an interest in the property is to pay delinquent taxes.

Appellant contends, however, that because the owners of real property in Arizona have no obligation to pay real property taxes, *see Peabody Coal Co. v. Navajo County,* 117 Ariz. 335, 572 P.2d 797 (1977), the taxes are a lien only against the land itself and not a personal obligation of the owners. This lack of personal liability, however, does not imply that the owners owe no duty to pay the taxes because that would only serve to frustrate the state's tax laws. A.R.S. § 42–452 provides that the owner's failure to redeem a tax lien will result in the loss of the property, an impermissibly harsh penalty to impose, if, as Cammon claims, the owner has no duty or obligation to pay taxes on the property. As stated in *Conway v. Mosher,* 55 Ariz. 467, 470, 103 P.2d 465, 466 (1940), "[t]he object of the delinquent tax law is to force each property owner to pay his taxes, and the harsh method of selling his property is resorted to only when he fails to pay them voluntarily."

### ATTORNEY'S FEES

■ The trial court awarded appellees attorney's fees pursuant to A.R.S. § 12–341.01(C) based upon a finding that Cammon's foreclosure action constituted harassment, was groundless and not made in good faith. We agree and affirm the award. Appellees have requested attorney's fees on appeal pursuant to the same statute. They will be awarded upon compliance with Ariz.R.Civ. App.P. 21(c), 17B A.R.S.

Affirmed.

DRUKE, C.J., and LIVERMORE, P.J., concur.