221 P.3d 390

**Daniel Charles WENDLAND and Catherine Wendland, husband and wife, Plaintiffs/Appellees,**

v.

**ADOBEAIR, INC., a Delaware corporation doing business in Maricopa County, Arizona, Defendant/Appellant.**

**No. 1 CA–CV 07–0815.**

Court of Appeals of Arizona, Division 1, Department A.

Dec. 8, 2009.

Haralson Miller Pitt Feldman & McAnally
PLC By Stanley G. Feldman, Jose de Jesus
Rivera, Robert E. Pastor, Kathleen Hale,
Phoenix, Attorneys for Plaintiffs/Appellees.

Surrano Law Offices By Charles J. Surrano III, Trinette Gragirena, John N. Wilborn, Phoenix, Attorneys for Defendant/Appellant.

## OPINION

BROWN, Judge.

¶ 1 Defendant AdobeAir, Inc. appeals from a jury verdict in favor of plaintiffs Daniel and Catherine Wendland. AdobeAir argues that the trial court erred by allowing the Wendlands to present evidence to the jury relating to Occupational Safety and Health Act[1] standards and by instructing the jury as to the applicability of such evidence.[2] For the following reasons, we affirm.

## BACKGROUND[3]

¶ 2 The Wendlands sued AdobeAir and other entities for negligence relating to Mr. Wendland's unexpected fall into an open pit located in a facility controlled by AdobeAir (the "Property"). The Property includes a fabrication building, also known as Building 2, where AdobeAir manufactured evaporative coolers. Building 2 contained large press machines; underneath each press was a pit between ten and twelve feet deep used to catch metal shavings and to allow access to the machines.

¶ 3 In 2003, AdobeAir sold the Property to Phoenix Adobe Partners, L.L.C. ("Partners"). AdobeAir agreed to lease back a portion of the Property from Partners for fifteen years. AdobeAir also agreed to a short-term lease of the buildings it currently occupied, including Building 2, while it relocated its manufacturing business. As part of its relocation process, AdobeAir removed the press machines from Building 2, leaving the pits underneath exposed. AdobeAir agreed it would fill the pits to return the floor to a flat surface before returning the premises to Partners.

¶ 4 When the short-term lease ended in December 2004, AdobeAir had not completed its demolition and repair work in Building 2 and still occupied the premises. Partners allowed AdobeAir to continue to occupy the premises and billed it for rent. AdobeAir completed its demolition work in Building 2 in February 2005 but did not finish filling the pits until April 2005.

¶ 5 Meanwhile, Partners planned to remodel Buildings 2, 3, and 4 for a new tenant. Partners employed Kennedy Design Build ("Kennedy") as the general contractor for the remodel, which began some time in March 2005. According to Partners, Kennedy was not allowed to work in Building 2 until AdobeAir had filled the pits because of safety concerns; therefore, Partners focused its immediate efforts on remodeling Building 3. Building 3 is attached to and accessible only through Building 2.

¶ 6 Mr. Wendland, who owns and operates a company that installs acoustical ceiling tile, was asked by Chris Hagen, Kennedy's manager, to prepare a bid for the remodeling project. Mr. Wendland arrived at the Property on March 31, 2005. He had difficulty finding Kennedy's jobsite, and called Hagen for directions. Following Hagen's directions, Mr. Wendland entered Building 2 through a partially opened roll-up door on the north side of the building. The building was poorly lit, but he saw light and heard noise coming from the offices in Building 3. While walking through Building 2 toward the offices, he fell into one of the pits and suffered severe injuries.

¶ 7 Before trial, AdobeAir moved *in limine* to preclude the testimony of the Wendlands' work-site safety expert, Alfred Horton. AdobeAir asserted that Horton, whose opinion as to the standard of care was essentially based on OSHA standards, should not be allowed to testify because no employer-employee relationship existed between AdobeAir and Mr. Wendland. According to AdobeAir, Mr. Wendland was not a member of the class of persons OSHA was intended to

---

1. The Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651–700 ("OSHA").

2. AdobeAir raises several other issues on appeal, which we address in a separate memorandum decision. *See* ARCAP 28(g).

3. We review the facts and inferences therefrom in the light most favorable to upholding the jury's verdict. *See Powers v. Taser Int'l, Inc.,* 217 Ariz. 398, 399 n. 1, ¶ 4, 174 P.3d 777, 778 n. 1 (App. 2007).

protect and therefore the Wendlands could not properly invoke a violation of OSHA standards as evidence of negligence or negligence *per se.* AdobeAir further argued that Arizona law explicitly prevents admission of OSHA standards as evidence of negligent conduct, citing *Pruett v. Precision Plumbing, Inc.,* 27 Ariz.App. 288, 293, 554 P.2d 655, 660 (1976).

¶ 8 The Wendlands countered that Horton's proposed testimony regarding OSHA standards was relevant in determining whether AdobeAir's conduct was negligent. They asserted that OSHA standards reflect the community's judgment as to what constitutes reasonable conduct in particular circumstances and that "nothing in *Pruett's* holding or dicta even suggests a general exclusion of OSHA standards from a jury's consideration in all kinds of cases."

¶ 9 During oral argument on the motion, AdobeAir argued that Horton's testimony was expected to establish a standard of care that required a safety guarantee and would thus misstate the law. Counsel for the Wendlands, however, assured the trial court Horton would not opine that the appropriate standard was a guarantee of safety. The court then denied AdobeAir's motion, concluding that Horton's testimony "may be some evidence of negligence, but it's not determinative of the issue." The court also alerted the parties that it would instruct the jury to limit the weight of the OSHA evidence.

¶ 10 At trial, testimony was presented about the condition of Building 2 at the time of the accident. Witnesses for AdobeAir stated that yellow caution tape, strung between barrels, had been placed around the pits before Mr. Wendland's fall. Mr. Wendland testified, however, that he did not recall seeing any tape or barrels in the building and that the building was poorly lit. In addition, Horton testified as to the steps that AdobeAir should have taken to protect against a person falling into the pits in Building 2, relying heavily on OSHA standards applicable generally to the covering of open pits.

¶ 11 As to their damages, the Wendlands sought compensation for Mr. Wendland's past and future medical expenses, pain and suffering, his lost earnings and earning capacity, as well as Mrs. Wendland's loss of consortium. The jury awarded $500,000 in damages to the Wendlands, and found AdobeAir one hundred percent at fault.[4] AdobeAir timely appealed.

## DISCUSSION

¶ 12 AdobeAir contends that the trial court erred in admitting evidence of OSHA standards because: (1) Mr. Wendland was not an employee of AdobeAir and thus was not part of the class of individuals to be protected by OSHA regulations, and (2) irrespective of Mr. Wendland's relationship to AdobeAir, Arizona law prohibits the admission of OSHA standards as evidence of negligence. On appeal, we will not disturb a trial court's rulings on the admission or exclusion of evidence unless a clear abuse of discretion appears, or the court misapplied the law, and prejudice results. *See Larsen v. Decker,* 196 Ariz. 239, 241, ¶ 6, 995 P.2d 281, 283 (App.2000).

## I. Admissibility of OSHA Evidence

¶ 13 OSHA was adopted to reduce the number of occupational safety and health hazards in the workplace and to protect employees from dangerous work conditions. *See* 29 U.S.C. § 651. It imposes certain duties on employers to provide a safe working environment for employees. *See* 29 C.F.R. § 1975.1. The duties imposed by OSHA, however, do not create a private right of action for personal injuries sustained by employees or subcontractors. 29 U.S.C. § 653(b)(4); *Pruett,* 27 Ariz.App. at 293, 554 P.2d at 660. Instead, causes of action for personal injuries must be based on the claimed breach of a duty created under the common law, contract, or another statute. *See* 29 U.S.C. § 653(b)(4). For purposes of Mr. Wendland's accident, it is undisputed that AdobeAir was not bound by OSHA regulations, as Mr. Wendland was not an employee of AdobeAir. Accordingly, the question is whether such regulations were

---

4. The Wendlands' claims against Partners, as well as the cross-claims between AdobeAir and

Partners, were settled prior to trial. Partners was named, however, as a non-party at fault.

appropriately referred to at trial by the Wendlands as some evidence of the standard of care that AdobeAir should have followed.

¶ 14 As the possessor of Building 2 at the time of Mr. Wendland's injury, AdobeAir owed Mr. Wendland a duty to keep the premises reasonably safe and warn of any known dangers. *See Woodty v. Weston's Lamplighter Motels,* 171 Ariz. 265, 268, 830 P.2d 477, 480 (App.1992) (a landowner or possessor of property has a duty to keep such property reasonably safe and keep licensees from coming upon known hidden perils).[5] Thus, the Wendlands' negligence claim was based on a land possessor's duty under the common law; the claim did not arise under OSHA or any other statute or regulation.[6]

## A. Arizona Law—*Pruett* is not Controlling

¶ 15 Relying on *Pruett,* AdobeAir first contends that Horton's testimony regarding OSHA standards should not have been presented to the jury as evidence of the standard of care because Arizona law prohibits use of OSHA to establish negligence or negligence *per se.* 27 Ariz.App. at 288, 554 P.2d at 655. Notwithstanding AdobeAir's contention that *Pruett* is controlling, whether OSHA standards may be presented to a jury as some evidence of a standard of care is a matter of first impression in Arizona.[7]

¶ 16 In *Pruett,* the employee of a plastering subcontractor who was injured while working on a construction site brought a negligence action against the landowner and general contractor. *Id.* at 289, 554 P.2d at

656. The injury occurred when the employee, Pruett, fell four stories from a rooftop while plastering an exterior wall accessible only from a twenty-inch wide ledge. *Id.* at 290, 554 P.2d at 657. To reach the top of the nine-foot wall, Pruett stood on a board fitted atop a sawhorse placed in the twenty-inch access space. *Id.* Although he took this action without consultation, direction, or approval from the general contractor, Pruett argued that liability should nonetheless be imposed against the landowner and general contractor under OSHA. *Id.* at 290–91, 554 P.2d at 657–58. The trial court disagreed and granted the defendants' motion for a directed verdict. *Id.* at 289, 554 P.2d at 656.

¶ 17 On appeal, Pruett argued that the OSHA regulations imposed a non-delegable duty on the general contractor to ensure that adequate precautions were taken by all subcontractors to protect the safety of their employees. *Id.* at 293, 554 P.2d at 660. This court disagreed, noting that OSHA expressly denies establishing "a cause of action for personal injuries to an employee or subcontractor." *Id.* (citations omitted).

¶ 18 Pruett also argued that even absent a duty under OSHA, OSHA regulations provide evidence of the standard of care imposed upon general contractors. *Id.* at 293, 554 P.2d at 660. We summarily rejected his argument, stating that OSHA does not "qualify as evidence of the standard of care because Arizona does not recognize non-delegable duties of independent contractors ... and non-delegable duties for safety are the standard set by OSHA's regulations." *Id.* (citations omitted). Seizing on that language,

---

5. "A licensee is a person who is privileged to enter or remain on land only by virtue of the possessor's consent." Restatement (Second) of Torts § 330 (1965). Arguably, Mr. Wendland was not a licensee because he was not invited to the property by the possessor, AdobeAir. At trial, however, the parties agreed that Wendland should be treated as a licensee. Thus, consistent with the court's instructions to the jury, AdobeAir had a duty "to use reasonable care to warn of or safeguard an unreasonably dangerous condition" of which it had notice.

6. AdobeAir does not dispute that Wendland's claim is grounded in common law negligence, and not negligence *per se* resulting from a violation of OSHA standards.

7. In *Sarmiento v. Stubblefield's Custom Concrete, Inc.,* 178 Ariz. 440, 442 n. 2, 874 P.2d 997, 999 n. 2 (App.1994), this court briefly referenced OSHA standards in a personal injury case. The plaintiff in *Sarmiento* presented evidence creating a material question of fact by offering the testimony of a safety expert that "the unguarded and uncovered blockouts created a hazardous or dangerous condition, violated OSHA regulations, violated commonly recognized safety practices and principles, and unreasonably placed the burden on other workers to adequately protect themselves from the hazards associated with the blockouts." *Id.* In that case, however, we did not address any of the issues presented here.

AdobeAir asserts that Arizona law prohibits the use of OSHA standards to establish the standard of care in negligence cases, and suggests it cannot even be used as some evidence of the applicable standard. We do not interpret *Pruett* so broadly.

¶ 19 The quoted language is dictum because we only examined the issue of duty in *Pruett;* we never reached the issue of standard of care. The court in *Pruett* held that although the general contractor had a duty to provide a reasonably safe workspace to independent contractors and their employees, the general contractor had no duty to ensure the safety of the subcontractor's employee in the performance of his work when the employee independently decided what methods to employ in performing it. *Id.* at 292–93, 554 P.2d 655. Absent a finding of a duty, there was no need to determine a standard of care. Thus, *Pruett* does not control the issue before us.

### B. OSHA as Some Evidence of Negligence

¶ 20 AdobeAir next argues that OSHA standards should not have been permitted as evidence of negligence because Mr. Wendland was not AdobeAir's employee and therefore he was not part of the class of people intended to be protected by OSHA. Although this contention has merit in considering a negligence *per se* claim, we are not persuaded that OSHA standards can never provide an appropriate example of what is reasonable conduct under certain circumstances, including those where the standards are not binding on the defendant.

¶ 21 The Restatement supports allowing evidence of administrative regulations to inform the standard of care in negligence ac-

tions. Restatement (Second) of Torts § 288B cmt. d (1965) ("[T]he requirements of administrative regulations are not adopted by the court as defining a definite standard of conduct in negligence actions, but are accepted as affording relevant evidence."); *see also Barnes v. Outlaw,* 192 Ariz. 283, 285, 964 P.2d 484, 486 (1998) (recognizing that Arizona courts generally follow the Restatement absent statutes or case law to the contrary, but will not do so blindly). Additionally, the admission of OSHA standards as some evidence of the relevant standard of care in cases where OSHA is not binding has been permitted by the majority of courts in other jurisdictions that have considered the issue. *See Robertson v. Burlington Northern R. Co.,* 32 F.3d 408, 410–11 (9th Cir.1994) (adopting the view of the Third and Fourth Circuits and holding that OSHA evidence may be admitted as some evidence of the applicable standard of care); *Thoma v. Kettler Bros., Inc.,* 632 A.2d 725, 730 (D.C.Cir. 1993) (finding that even when persons are not part of class intended to be protected by OSHA regulations, the regulations may be admissible as some evidence of the standard of care); *Orduna v. Total Constr. Servs., Inc.,* 271 Neb. 557, 713 N.W.2d 471, 479 (2006) (concluding that although a non-employee third party could not use an OSHA violation to establish negligence *per se,* he could nonetheless use it as "evidence of negligence to be considered with all the other evidence in the case"); *Hansen v. Abrasive Eng'g and Mfg., Inc.,* 317 Or. 378, 856 P.2d 625, 630 (1993) (finding that OSHA rules "may be relevant to tort claims even when a defendant is not bound by those rules," as they provide some relevant information as to whether the defendant met the standard of care).[8]

---

8. *See also Ries v. Nat'l R.R. Passenger Corp.,* 960 F.2d 1156, 1165 (3d Cir.1992) (finding that violation of OSHA regulation was admissible as evidence of railroad's negligence in action under FELA); *Rolick v. Collins Pine Co.,* 975 F.2d 1009, 1014 (3d Cir.1992) (recognizing that OSHA regulations may be borrowed for use as evidence of the standard of care even when OSHA does not apply to the case itself); *Scott v. Matlack, Inc.,* 39 P.3d 1160, 1167–70 (Colo.2002) (noting that OSHA violation may not be used as basis for negligence *per se* claim, but it may be used as some, non-conclusive evidence of the standard of

care in the relevant industry); *Marzec–Gerrior v. D.C.P. Indus., Inc.,* 164 Vt. 569, 674 A.2d 1248, 1249 (1995) (violation of an OSHA regulation is properly admissible as evidence of a standard of care). Conversely, relatively few courts have prohibited OSHA evidence altogether in negligence cases. *See, e.g., Sumrall v. Miss. Power Co.,* 693 So.2d 359, 366–67 (Miss.1997) (holding that evidence of OSHA violations was not admissible to show defendant's negligence based on state statute precluding use of governmental safety codes not adopted by state legislature to prove negligence); *Trowell v. Brunswick Pulp and Paper*

¶ 22 Further, under longstanding principles of tort law, "where [a] statute does set up standard precautions, although only for the protection of a different class of persons, or the prevention of a distinct risk, this may be a relevant fact, having proper bearing upon the conduct of a reasonable man under the circumstances[.]" William L. Prosser, *The Law of Torts* § 36, at 202 (4th ed.1971); *see Hansen v. Kemmish,* 201 Iowa 1008, 208 N.W. 277, 279–80 (1926) (concluding that a statute requiring hogs to be restrained by a fence of specific build and strength to prevent misbreeding could be used as some evidence of the kind of fence required to keep hogs off of highways); *Slick Oil Co. v. Coffey,* 72 Okla. 32, 177 P. 915, 916 (1918) (noting that when injured party's suit is not based upon the violation of a statute or ordinance, proof of a violation thereof is nevertheless permitted as evidence tending to establish negligence). As recognized by the Ninth Circuit Court of Appeals, safety standards such as those contained in OSHA assist "a jury's determination of negligence because they represent the community's judgment as to what conduct is reasonable and what conduct is not." *Cooper v. Firestone Tire and Rubber Co.,* 945 F.2d 1103, 1107 (9th Cir.1991) (citing *Prosser and Keeton on the Law of Torts* § 36, at 220 (5th ed.1984); 3 F. Harper, F. James & O. Gray, *The Law of Torts* § 17.6, at 621 (2d ed.1986) ). Consistent with these authorities, we hold that an OSHA standard may be considered as some evidence of the standard of care even when OSHA requirements are not binding on the defendant, so long as there is sufficient foundation (1) establishing that the standard at issue is directly related to the exercise of reasonable care and (2) a reasonable nexus exists between the proffered standard and the circumstances of the injury.[9]

¶ 23 In the case before us, the parties disputed whether AdobeAir had taken reasonable steps to prevent a person from falling into one of the pits in Building 2. AdobeAir presented evidence that it had employed a security guard to monitor the building complex, the guard was available to escort visitors and give warning about the dangers of the pits in Building 2, it posted warning signs on the entry gate to the Property to prevent people from wandering around the Property unattended, and it placed barrels and caution tape around the pits to warn visitors of the danger. Mr. Wendland testified that he could not recall whether anyone was manning the guard shack on the Property when he arrived and no one came out to meet him or warn him about the open pits. He also stated that Building 2 was poorly lit when he entered, but he saw light and heard noise coming from the offices in Building 3, so he continued walking through Building 2. Additionally, he did not see any barrels or caution tape around the pits prior to his fall.

¶ 24 The only witness who testified specifically as to a standard of care was Horton, the Wendlands' work-site safety expert. He told the jury of his 35 years of workplace safety experience, including work with a fire department, OSHA, and consulting for the past 25 years to numerous companies in the construction, manufacturing, recreation, and general industry sectors, as well as cities and other government entities. Horton also explained that he had attended numerous seminars and classes on workplace safety and that he visits businesses regularly to inspect for safety problems and to conduct accident investigations. His testimony focused almost exclusively on OSHA standards for open pits. In his opinion, consistent with OSHA standards, AdobeAir should have covered the pits or barricaded them with a fence or rail.[10]

---

*Co.,* 522 F.Supp. 782, 784 (D.S.C.1981) (precluding evidence of alleged violations of OSHA provisions when OSHA is not binding on the defendant under the circumstances).

9. Depending on the circumstances, a limiting instruction may also be warranted.

10. According to Horton, both the OSHA general industry standards and the OSHA construction standards require that a floor opening be either (1) covered with material that would withstand a 200 pound load on a four square foot area (the weight of an average worker) or (2) barricaded by a hand rail that is 42 inches high and can deflect 200 pounds of weight applied with horizontal pressure.

¶ 25 Horton opined that merely surrounding the pits with yellow caution tape was insufficient to provide warning or protection from the hazard and that such a measure did not comply with OSHA standards. He also offered brief testimony relating to other safety options that could have been employed, including restricting access to the property altogether. Ultimately, however, Horton concluded that "a barrier would have been the most common, most useful, and most reasonable thing to use."

¶ 26 We find that the trial court acted within its discretion in allowing the jury to consider this evidence. At no time was the jury told that OSHA standards were binding on AdobeAir or that those standards were the sole yardstick against which AdobeAir's conduct should be measured.[11] Instead, the jury was presented with Mr. Wendland's testimony as to the circumstances leading up to his fall and Horton's opinion regarding the safety measures that should have been employed to guard against the danger of open pits. In addition, AdobeAir was permitted to demonstrate that it acted reasonably under the circumstances. In determining whether AdobeAir had notice of an unreasonably dangerous condition and whether it failed to use reasonable care to provide warnings or adequate safeguards, the jury was free to consider the depth and nature of the open pits, lighting conditions in Building 2, access to the work area, the presence of on-site security personnel, the posting of signage, the erection of barrels and tape, OSHA standards, and all other relevant circumstances. See Hansen, 208 N.W. at 280 (in determining whether defendant acted negligently in allowing hog to escape from enclosure, jury could properly consider the fence laws, the character and habits of the animal, the measures that defendant took to prevent its escape, and other attendant circumstances).

Accordingly, the trial court did not abuse its discretion in allowing Horton to testify about OSHA standards.[12]

## II. Limiting Instruction on OSHA standards

■ ¶ 27 AdobeAir also argues that the trial court erred in instructing the jury regarding OSHA standards. In discussing the instruction at trial with the court, AdobeAir contended that any instruction on OSHA would be improper because it would "confuse the jury as to what the standard is [.]" A key concern of AdobeAir was that OSHA would be used to establish a standard requiring possessors of land, general contractors, and others to guarantee the safety of those on the relevant property. During the pretrial management conference, however, the court clarified that neither OSHA testimony nor the OSHA jury instruction would be used to establish the standard of care; OSHA would only be used as "an example of a standard" and the jury could "choose not to apply it to Mr. Wendland." The court then explained that it would prepare some language to ensure the jury would limit its consideration of OSHA standards and ultimately it added the following instruction:

> Evidence has been introduced in this case on the subject of Occupational Safety and Health Administration, OSHA, standards for the *limited purpose of suggesting standards to protect others from floor openings.* The issue of negligence in this case must be determined by you based on all the evidence submitted to you, and by applying the law as I have instructed you.

(Emphasis added.) A jury instruction must be both harmful to the complaining party and directly contrary to the rule of law to justify reversal. *AMERCO v. Shoen,* 184 Ariz. 150, 159, 907 P.2d 536, 545 (App.1995) (citation

---

11. Horton did not testify that AdobeAir was required to follow OSHA standards in making its premises safe, nor did he claim that compliance with OSHA was the legal standard for premises liability cases in Arizona. Horton acknowledged that he was not testifying as to the legal standard in Arizona and he did not know the relationship between AdobeAir and Mr. Wendland, although he testified that he presumed there was no relationship.

12. The only question presented here is whether OSHA standards may be relied upon as some evidence of the standard of care when offered through expert testimony; whether OSHA standards may be introduced at trial as stand-alone evidence is not before us.

omitted). AdobeAir contends that this instruction changed the standard of care from reasonableness to guaranteed safety. We disagree.

¶ 28 We recognize that it would have been better if the trial court had explicitly stated that the OSHA standards could only be considered as some evidence of the standard of care AdobeAir was expected to meet. But the court's instruction as given did convey to the jury that evidence of OSHA standards should be considered only for the limited purpose of suggesting how AdobeAir could have acted to protect people from injuring themselves in the open pits. The court also explained that the jury was to decide the case based upon all the evidence submitted and the law as instructed. We presume that the jury followed the court's instructions. *Elliott v. Landon,* 89 Ariz. 355, 357, 362 P.2d 733, 735 (1961) (citation omitted).

¶ 29 We also reject AdobeAir's argument that the instruction was an improper comment on the evidence, as it did not suggest that the evidence established that AdobeAir violated the OSHA standards or breached the standard of care owed Wendland. *Jones v. Munn,* 140 Ariz. 216, 221, 681 P.2d 368, 373 (1984) ("To constitute a comment on the evidence, the court must express an opinion as to what the evidence shows or what it does not show."). Thus, we find that the trial court did not err in instructing the jury as to the applicability of the OSHA standards.

## CONCLUSION

¶ 30 Based on the foregoing, we affirm the judgment of the trial court finding AdobeAir liable for negligence and awarding damages to the Wendlands.

CONCURRING: DANIEL A. BARKER and PETER B. SWANN, Judges.