NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JOSEPH WINCKLER, *Plaintiff/Appellee*,

*v.*

BNSF RAILWAY COMPANY, a Delaware corporation,
*Defendant/Appellant.*

No. 1 CA-CV 13-0516
FILED 3-26-2015

Appeal from the Superior Court in Maricopa County
No. CV 2009-020785
The Honorable Dean M. Fink, Judge

**VACATED AND REMANDED**

COUNSEL

Thorpe Shwer, P.C., Phoenix
By William L. Thorpe, Bradley D. Shwer, Kristin Paiva
*Counsel for Defendant/Appellant*

Osborn Maledon, P.A., Phoenix
By Mark I. Harrison, Brandon A. Hale, Thomas L. Hudson
*Co-Counsel for Plaintiff/Appellee*

St. John & Romero, P.L.L.C., Mesa
By Jason J. Romero
*Co-Counsel for Plaintiff/Appellee*

---

## MEMORANDUM DECISION

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Patricia K. Norris and Judge Randall M. Howe joined.

---

**D O W N I E**, Judge:

**¶1**        Defendant/Appellant BNSF Railway Company ("BNSF") appeals from a judgment entered in favor of Plaintiff/Appellee Joseph Winckler after a jury trial.   For the following reasons, we vacate the judgment and remand for a new trial.

### FACTS AND PROCEDURAL HISTORY

**¶2**        Winckler worked as a conductor for BNSF.  During a fueling stop in Winslow, Arizona on May 29, 2007, Winckler dismounted from a locomotive, stepping down with his right foot, which landed partially on a wooden crosstie and partially on ballast — the crushed rocks that form the foundation for the railroad tracks. The ballast was not flush with the top of the tie, creating a depression into which Winckler's foot and ankle rolled.

**¶3**        Winckler filed a two-count complaint against BNSF under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51-60, alleging: (1) count one:  negligence based on the failure "to properly maintain and provide a reasonably safe, uniform and regular walkway" ("negligence claim"); and (2) count two:  violation of a safety regulation — Arizona Administrative Code ("Code") R14-5-110 ("Rule 110") ("regulatory claim").

**¶4**        BNSF moved for summary judgment on the regulatory claim, arguing:   (1) Winckler's injury occurred on the track, not a walkway, making Rule 110 inapplicable; (2) Rule 110 is not actionable under FELA; and (3) federal law preempts Rule 110. After briefing and oral argument, the superior court denied BNSF's motion.  BNSF moved for reconsideration and, for the first time, asserted that the Rule 110 standards applied only to construction, reconstruction, or modifications occurring after May 1992 — a limitation BNSF claimed Winckler "has so far ignored."  The superior court denied the motion for reconsideration.

¶5 A 12-day jury trial ensued. At the close of Winckler's case-in-chief, BNSF moved for judgment as a matter of law ("JMOL") on both counts of the complaint. The trial court denied the motion. At the close of evidence, BNSF moved for JMOL on the regulatory claim. BNSF argued Winckler had failed to establish that the premises were constructed, reconstructed, or modified after May 28, 1992 — the operative date for Rule 110's standards. The court granted BNSF's motion, leaving only the negligence claim for the jury to consider.

¶6 The jury found in favor of Winckler, setting his damages at $3,852,256, but finding him to be 20% at fault. BNSF unsuccessfully moved for a new trial. It thereafter filed a timely notice of appeal.

¶7 While its appeal was pending, BNSF learned of allegations that Winckler had intentionally inflicted injury on his knee in order to increase his claim against BNSF. BNSF moved to suspend its appeal and revest jurisdiction in the superior court so that it could rule on a request for relief under Arizona Rule of Civil Procedure 60(c). This Court granted BNSF's motion. After briefing and argument, the superior court denied BNSF's Rule 60(c) motion; BNSF filed an amended notice of appeal. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A), -2101(A)(1), (2), (5)(a).

## DISCUSSION

### I. The Regulatory Claim

¶8 BNSF contends the superior court erred by denying its motion for summary judgment on the regulatory claim. Although the denial of summary judgment is generally not reviewable on appeal from a final judgment entered after a trial on the merits, a party may preserve a summary judgment issue for appellate review "by reasserting it in a Rule 50 motion for judgment as a matter of law or other post-trial motion." *John C. Lincoln Hosp. & Health Corp. v. Maricopa Cnty.*, 208 Ariz. 532, 539, ¶ 19, 96 P.3d 530, 537 (App. 2004); *see also Ryan v. S.F. Peaks Trucking Co., Inc.*, 228 Ariz. 42, 48, ¶ 20, 262 P.3d 863, 869 (App. 2011) ("[I]n cases that have proceeded to trial, a party that wishes to preserve a summary judgment issue for appeal must reassert it during or after trial in a Rule 50 motion for judgment as a matter of law or other motion."). BNSF reasserted its summary judgment arguments in a Rule 50 motion, thereby preserving those issues for our review.

¶9 We disagree with Winckler's assertion that the denial of summary judgment is "irrelevant because the court granted BNSF a

directed verdict" on the regulatory claim at the close of the trial evidence. As we discuss *infra*, allowing the regulatory claim to proceed to trial led to improper evidence and arguments being presented to the jury that affected BNSF's right to a fair trial.

**¶10**     In assessing whether the court erroneously denied summary judgment on the regulatory claim, we confine our review to the record that was before the court at the time of its ruling. *See Brookover v. Roberts Enters., Inc.*, 215 Ariz. 52, 55, ¶ 8, 156 P.3d 1157, 1160 (App. 2007). A court may grant summary judgment when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We review the denial of a motion for summary judgment for an abuse of discretion. *Sonoran Desert Investigations, Inc. v. Miller*, 213 Ariz. 274, 276, ¶ 5, 141 P.3d 754, 756 (App. 2006). "A court abuses its discretion if it commits an error of law in reaching a discretionary conclusion." *Flying Diamond Airpark, L.L.C. v. Meienberg,* 215 Ariz. 44, 50, ¶ 27, 156 P.3d 1149, 1155 (App. 2007). We review legal conclusions *de novo*. *Midtown Med. Grp., Inc. v. State Farm Mut. Auto. Ins. Co.*, 220 Ariz. 341, 343, ¶ 7, 206 P.3d 790, 792 (App. 2008).

**¶11**     In seeking summary judgment on the regulatory claim, BNSF argued Winckler's injury "occurred while he was on the track structure – the ties and ballast supporting the rails – not on a walkway addressed by [Rule 110], which is separate and distinct from the track structure." As the superior court correctly noted, the parties did not dispute the location of or circumstances surrounding Winckler's injury. Excerpts from Winckler's deposition testimony established:

- When Winckler stepped off the locomotive ladder he knew he was "stepping down onto ballast or ties."
- After twisting his ankle, Winckler saw there was a depression where the ballast was not "hard up against the top of the tie."

Winckler further acknowledged that his right foot "landed partially on top of an exposed railroad tie."[1]

**¶12**     Rule 110, entitled "Walkway and Clearance Standards," sets state standards "for all walkways." A.A.C. R14-5-110(A). The rule requires walkways "adjacent to tracks in all areas where railroad . . .

---

[1]     Winckler's trial testimony was consistent with his deposition testimony.

employees are required to perform trackside duties." A.A.C. R14-5-110(A)(1). Walkways must consist of "a uniform regular surface with a gradual slope not to exceed 1 inch rise in 8 inches." A.A.C. R14-5-110(A)(2)(a). Measurement and clearance standards for walkways are included in Code appendices. A.A.C. R14-5-110(A)(4).

¶13 The Code does not define "walkway." We therefore employ tools of statutory construction in ascertaining its meaning. *See Stapert v. Ariz. Bd. of Psychologist Exam'rs,* 210 Ariz. 177, 179, ¶ 7, 108 P.3d 956, 958 (App. 2005) (principles of statutory interpretation apply equally to administrative regulations). Ambiguity arises not only from the meaning of particular words, but "may arise in respect to the general scope and meaning of a statute when all its provisions are examined." *State v. Sweet,* 143 Ariz. 266, 269, 693 P.2d 921, 924 (1985).

¶14 By mandating walkways *"adjacent to tracks,"* A.A.C. R14-5-110(A)(1) (emphasis added), the plain language of Rule 110 suggests that a walkway is separate and distinct from the track. "Adjacent" is defined as "[l]ying near or close to, but not necessarily touching." Black's Law Dictionary (10th ed. 2014); *see W. Corr. Grp., Inc. v. Tierney,* 208 Ariz. 583, 587, ¶ 17, 96 P.3d 1070, 1074 (App. 2004) (In determining the plain meaning of statutory terms, courts "refer to established and widely used dictionaries."). But assuming the language of Rule 110 does not clearly resolve the issue, we look to the regulation's context, subject matter, historical background, effects and consequences, and spirit and purpose. *See Hayes v. Cont'l Ins. Co.,* 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994). We also construe related regulations together. *Ariz. Dep't of Revenue v. Action Marine, Inc.,* 218 Ariz. 141, 143, ¶ 10, 181 P.3d 188, 190 (2008); *see also State v. Seyrafi,* 201 Ariz. 147, 150, ¶ 13, 32 P.3d 430, 433 (App. 2001) (statutory provisions are construed in context with related provisions and in light of their place in the statutory scheme).

¶15 The Code clearly distinguishes between walkways and tracks. There are separate and, to some extent, mutually exclusive requirements for walkways, listed in Rule 110, and tracks, listed in A.A.C R14-5-109 ("Rule 109"). *Compare* A.A.C. R14-5-110 ("Walkway and Clearance Standards") *with* A.A.C. R14-5-109 ("Industrial Track Standards"). Rule 110, as discussed *supra* ¶ 12, requires walkways to have a "uniform regular surface with a gradual slope not to exceed 1 inch rise in 8 inches." A.A.C. R14-5-110(A)(2)(a). Rule 109, on the other hand, dictates a maximum grade of 2% for track structures and identifies components and surfaces that, by their very nature, cannot comprise a "uniform regular surface." *See* A.A.C. R14-5-109(B) (setting standards for

items such as ballast, wood crossties, steel rails, metal tie plates, metal anchors, and spikes). Rule 109 addresses ties and ballast in depth, whereas Rule 110 does not mention such track components. *Compare* A.A.C. R14-5-109(B)(4)-(6) *with* A.A.C. R14-5-110.

¶16 Winckler suggests he was injured on a walkway because he stepped partially onto a crosstie and partially onto ballast. We disagree. The railroad tie he stepped on was part of the track, as Winckler's own expert conceded. And Rule 109, which governs tracks, mandates that "track ballast" extend 6 inches beyond the ends of the ties. A.A.C. R14-5-109(B)(4)(e). Winckler does not claim he stepped more than six inches beyond the end of a crosstie. *Cf. Davis v. Union Pac. R.R. Co.*, 598 F. Supp. 2d 955 (E.D. Ark. 2009) (plaintiff who rolled ankle walking on loose ballast was injured in area that did not "support any track or track bed," so FELA claim was not preempted). Furthermore, the Code dictates different standards for track ballast and walkway ballast. *See* A.A.C. R14-5-109(B)(4)(a) ("Ballast material used in industrial tracks shall be not less than ¾ of an inch to 1½ inches."); A.A.C. R14-5-110(A)(3) ("In areas where heavy foot traffic exists, such as train yards[,] . . . the uniform surface material used shall be no larger than $3/8$ inch fines.").

¶17 Winckler emphasizes that some crossties in the area extended farther from the rail center line than others, including the one he stepped on. However, the Code specifies only a *minimum* length for ties, not a maximum length. *See* A.A.C. R14-5-109(B)(5)(d). Winckler has cited no legal authority suggesting that extended ties are not part of the track, and we are aware of none. The length of the crosstie may be relevant to the negligence claim, which alleges BNSF failed to provide a reasonably safe workplace, but it does not support Winckler's contention that his injury occurred on a walkway.

¶18 Winckler's reliance on A.A.C. R14-5-116 app. 5 ("Appendix 5") is similarly unavailing. Rule 110 incorporates the measurement and clearance standards shown in Appendix 5, which includes a diagram for "Walkways in [Train] Yards." *See* A.A.C. R14-5-110(A)(4), -116 app. 5. Appendix 5, though, does not establish what areas constitute a walkway. It also dictates no endpoint for the track structure. At most, Appendix 5 reflects the track shoulder should measure 8'6" from the center of the track and 6' from the rail. Such dimensions are designed to ensure safe clearance from passing trains. *See* A.A.C. R14-5-110(A)(4), (B)(3), -116 app. 5. Holding that walkways may extend onto crossties is not only unsupported by the Code, but would run afoul of clearance standards designed to prevent injuries from moving trains. *Cf. Norfolk & W. Ry. Co.*

*v. Burns*, 587 F. Supp. 161, 170 (E.D. Mich. 1984) ("[A] walkway really is that clear area between parallel rails which is not occupied by the cars which overhang the track themselves, and is really the area in which one could safely walk without getting hit by a railroad car or an appurtenance thereto.").

**¶19** Winckler's position at trial that a walkway exists anywhere an employee dismounts from a train is unsupported by any legal authority. Moreover, such an interpretation would implicitly modify the language of Rule 110 requiring walkways "adjacent to tracks" to read "adjacent to rails."[2] Courts "are not at liberty to rewrite [statutes] under the guise of judicial interpretation." *New Sun Bus. Park, LLC v. Yuma Cnty.*, 221 Ariz. 43, 47, ¶ 16, 209 P.3d 179, 183 (App. 2009).

**¶20** We agree with the superior court that "whether the location of [Winckler's] accident was a walkway under [Rule 110] is a question of law and statutory construction, not an issue of fact." But based on our *de novo* review, we conclude Winckler was injured on the track and not on a walkway subject to Rule 110. As such, BNSF was entitled to summary judgment on the regulatory claim.

## II.    New Trial Request

**¶21** A new trial may be granted for "[i]rregularity in the proceedings of the court . . . whereby the moving party was deprived of a fair trial" and for error in the admission of evidence. Ariz. R. Civ. P. 59(a)(1). A new trial should be granted when "there has been some error in the conduct of the original trial which, in all probability, has affected the verdict." *S. Ariz. Freight Lines v. Jackson*, 48 Ariz. 509, 512, 63 P.2d 193, 195 (1936). Appellate courts give greater deference to an order granting a new trial than to an order denying one. *Sadler v. Ariz. Flour Mills Co.*, 58

---

2       Although we do not reach BNSF's preemption argument, defining a walkway to include track components appears problematic. *See* FRA Track Safety Standards, 49 C.F.R. § 213; *Norfolk & W. Ry. Co.*, 587 F. Supp. at 169 ("Insofar as rails and track surface, including cross ties and ballast and all adjacent switches and appurtenances are concerned, this court has no trouble in concluding that the federal regulations do treat this subject matter, that they treat it comprehensively, and that there has been a clear indication of an attempt to regulate in these areas in a manner which would preempt state regulation.").

Ariz. 486, 490, 121 P.2d 412, 413 (1942) (order granting a new trial more liberally sustained because it does not finally dispose of the rights of the parties). We review the denial of a motion for new trial for abuse of discretion. *Boatman v. Samaritan Health Servs.*, 168 Ariz. 207, 212, 812 P.2d 1025, 1030 (App. 1990). As noted *supra*, ¶ 10, a court abuses its discretion if it commits an error of law in making a discretionary ruling. *Flying Diamond Airpark, LLC*, 215 Ariz. at 50, ¶ 27, 156 P.3d at 1155.

**¶22** Because BNSF was entitled to summary judgment on the regulatory claim, evidence about Rule 110 should not have been admitted at trial unless Winckler could demonstrate its relevance to the negligence claim. Ariz. R. Evid. 401. And once the court entered JMOL against Winckler on the regulatory claim, the jury could only consider evidence that was relevant to the negligence claim.

**¶23** BNSF contends Winckler made Rule 110 "the central claim, argument, and evidence of his case at trial," such that it "permeated every aspect of his claim" and was "unduly prejudicial." We agree that Winckler relied on Rule 110 early and often at trial. Immediately after greeting jurors in his opening statement, Winckler's counsel stated:

> An employer, property [owner] has a duty and a responsibility to make sure that their employees are not exposed to an unreasonable risk of harm in the walkways and the areas where their employees are expected to work. In this case, the evidence goes beyond that. Specifically, there's evidence that the State of Arizona has specific standards for railroads requiring that railroads provide reasonably regular walkways in areas where their employees are expected to work alongside their trains, their engines and their equipment. The purpose for that is to make sure that the employees are not exposed to unnecessary harm.

Later portions of Winckler's opening statement echoed this theme:

> The regulations which you'll hear about in this evidence were designed specifically to make sure those employees can get off railroad equipment onto the ground to perform their tasks for the railroad without the exposure to unreasonable risk of harm. . . .

> [Mr. Winckler] turned his ankle because the railroad failed to provide ballast – the rock – up to the level of the tie which was in the walkway causing the walkway to be, to not be reasonably regular, which the Arizona statute requires and causing the ankle to turn. . . .
>
> You'll hear testimony of managers who didn't know about the Arizona walkway standards; managers who didn't know how to check to make sure that the ballast was sufficient so that the employees didn't get hurt so the employees wouldn't unnecessarily be exposed to hazards which would cause slips, trips or falls. . . .
>
> And we believe that we will provide you with sufficient evidence to be able to support Mr. Winckler's burden in this case that it's more likely true than not that he was injured as a result of the railroad's negligence, violating walkway standards and the nature and scope of his harm.

**¶24**        Winckler repeatedly questioned witnesses about Rule 110. Over BNSF's foundation and relevance objections, a copy of Rule 110 was admitted into evidence, and Winckler's expert witness, Ray Duffany, discussed it in some depth. Duffany told jurors that Winckler was injured on a walkway and that the site of his injury was out of compliance with "Arizona Walkway Standards."

**¶25**        After the JMOL on the regulatory claim, the only possible relevance of Rule 110 was to serve as evidence regarding BNSF's duty to provide a reasonably safe workplace. There was, however, insufficient foundation (or a showing of relevance) establishing that Rule 110's *walkway* standards are co-extensive with the duty of ordinary care for *non-walkway* areas.[3] Indeed, as discussed *supra*, ¶ 15, by their very nature,

---

[3]        We express no opinion about whether evidence regarding Rule 110 will be admissible at the new trial. Winckler will obviously need to establish the foundation for and relevance of such evidence if he wishes to introduce it. *See, e.g., Peterson v. Salt River Project Agric. Improvement & Power Dist.*, 96 Ariz. 1, 8, 391 P.2d 567, 571 (1964) ("Evidence of non-compliance is generally admissible where the statute is a relevant safety statute."); *Wendland v. Adobeair, Inc.*, 223 Ariz. 199, 205, 221 P.3d 390, 396 (App. 2009) (OSHA rule "may be considered as some evidence of the standard of care," even though not binding on the defendant, if "sufficient

tracks cannot satisfy certain Rule 110 standards. Moreover, BNSF was prevented from questioning its witnesses about application of the walkway standards to the area in question. For example, when BNSF's counsel asked John Bosshart, director of track standards and procedures, whether the walkway standards applied to the location of Winckler's injury, Winckler's counsel objected, and the court sustained his objections.

¶26 We have also considered the closing arguments of counsel in assessing whether BNSF was deprived of a fair trial. *Cf. State v. Bruggeman*, 161 Ariz. 508, 510, 779 P.2d 823, 825 (App. 1989) (closing arguments may be taken into account when assessing adequacy of jury instructions). Consistent with his heavy reliance on Rule 110 throughout trial, Winckler's counsel mentioned the rule repeatedly in closing arguments and directed jurors' attention to the state requirements for walkways. He also told the jury it would not be asked to determine whether BNSF "violated the walkway standard, because they – *it's basically a technicality*." (Emphasis added.) Referring to Rule 110, and notwithstanding the dismissal of the regulatory claim, Winckler argued BNSF had violated the law, stating:

> [T]he railroads not only have their own walkway responsibilities, but there [are] many different states that have walkway standards as well. They've got to be familiar with them. They've got to know them. . . . Interestingly enough, just about every other [BNSF] manager out there we talked to really wasn't familiar with law that applies to the railroad. And I submit to you, ladies and gentlemen, nobody here is above the law.
>
> With regard to the Arizona walkway standard . . . just about everybody [from BNSF] didn't know much about it, hadn't even heard of it.

¶27 Faced with a significant last-minute change in the substantive claims the jury could consider, the superior court obviously did its best to address the altered legal landscape and to salvage the trial.

---

foundation" establishes the standard "is directly related to the exercise of reasonable care" and "a reasonable nexus exists between the proffered standard and the circumstances of the injury.").

The reality, though, is that jurors had participated in a lengthy trial that focused repeatedly on Rule 110 and its requirements for walkways. The court noted this reality after granting JMOL, observing that Rule 110 was "in evidence" and had "been talked about a lot." And the potential for confusion and/or misuse of evidence is not merely theoretical. Before Winckler's rebuttal closing argument, a juror submitted the following written question to the court:

> If the Arizona track law [Rule 110] is not to be considered, why is it in evidence but not to be used? Has it been removed from the evidence?

The court responded, "The Arizona regulation is in evidence, and it can be considered in connection with your negligence determination. However, it is not a law that governs this case."

**¶28** We decline Winckler's invitation to conclude that BNSF waived any objection to jurors considering Rule 110 evidence on the negligence claim. The tenet that arguments not made in the trial court may not be asserted on appeal is procedural, not jurisdictional, and we have discretion about whether to apply the doctrine. *City of Tempe v. Fleming*, 168 Ariz. 454, 456, 815 P.2d 1, 3 (App. 1991). This is not a situation where an objection by BNSF would have offered Winckler an opportunity to cure the claimed deficiency through presentation of additional evidence. The evidentiary phase of trial was closed. More fundamentally, by the time the superior court entered JMOL on the regulatory claim, BNSF had repeatedly lost on the issue of whether Winckler's injury occurred on a walkway. Asking the court to preclude Rule 110 as evidence of negligence because the injury did not occur on a walkway would have been a futile act.[4] *Cf. Coronado Co., Inc. v. Jacome's*

---

[4] On numerous occasions during trial, the court reiterated its ruling that the area at issue was a walkway, including the following statements:

- "I'm not going to change the underlying ruling. So we're still stuck with the walkway standards apply."
- "I believe that that area is a walkway, and I've already indicated that."
- "[A]s you know, I've already found that the area adjacent to the track was a walkway and that the standards, at least as to that, that the standards are applicable."

11

*Dep't Store, Inc.*, 129 Ariz. 137, 140, 629 P.2d 553, 556 (App. 1981) ("The law does not require a futile act."). For all of these reasons, we decline to apply the doctrine of waiver so as to foreclose BNSF's challenges to the admission of Rule 110 evidence on the negligence claim.

## CONCLUSION[5]

**¶29** The existence of the regulatory claim at trial, the extensive evidence and argument about Rule 110 and walkways, the juror confusion over the role of the regulation, the lack of foundation for or demonstrated relevance of Rule 110 vis-à-vis the negligence claim, and Winckler's closing arguments, considered together, deprived BNSF of a fair trial. We therefore vacate the judgment in favor of Winckler and remand for a new trial on the negligence claim. We award BNSF its taxable costs on appeal upon compliance with ARCAP 21.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama

---

- "[I]n terms of whether this area is one that the walkway standards applies to, that part, that horse has ridden or the ship has sailed."

[5] Based on our analysis, we need not reach the additional grounds for reversal urged by BNSF.